Jonathan Gardner (*pro hac vice*)
David J. Goldsmith
Christine M. Fox (*pro hac vice*)
Theodore J. Hawkins (*pro hac vice*)
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
(212) 907-0700
(212) 818-0477 (fax)
jgardner@labaton.com
dgoldsmith@labaton.com
cfox@labaton.com
thawkins@labaton.com

*Lead Counsel for Lead Plaintiff*
*Steamfitters Local 449 Pension Plan*
*and the Settlement Class*

[Additional counsel listed on
signature block]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| STEAMFITTERS LOCAL 449 PENSION PLAN, Individually and on Behalf of all Others Similarly Situated, | Case No. 2:18-cv-03579 AB (JCx) |
| Plaintiff, | <u>CLASS ACTION</u> |
| vs. | |
| MOLINA HEALTHCARE, INC., J. MARIO MOLINA, JOHN C. MOLINA, TERRY P. BAYER and RICK HOPFER, | |
| Defendants. | |

## <u>STIPULATION AND AGREEMENT OF SETTLEMENT</u>

1    This Stipulation and Agreement of Settlement ("Settlement Agreement") is

2  made and entered into by and between Court-appointed Lead Plaintiff Steamfitters

3  Local 449 Pension Plan ("Steamfitters" or "Plaintiff"), individually and on behalf

4  of all other members of the Settlement Class defined below, on the one hand, and

5  Molina Healthcare, Inc. ("Molina" or the "Company"), J. Mario Molina, John C.

6  Molina, Terry P. Bayer, and Rick Hopfer (collectively, "Defendants"), on the

7  other.  This Settlement Agreement is intended to fully, finally, and forever resolve,

8  discharge, and settle the Released Claims and Released Defendants' Claims, both

9  as defined herein, subject to the approval of the Court and the terms and conditions

10  set forth herein.

11    **WHEREAS:**

12    A.    All words or terms used herein that are capitalized shall have the

13  meanings ascribed to those words or terms herein and in Paragraph 1 below, titled

14  "Definitions."

15    B.    On April 27, 2018, Steamfitters filed a securities class action

16  complaint in the United States District Court for the Central District of California

17  (the "Court" or "District Court") on behalf of purchasers of Molina common stock.

18  The Action ultimately was assigned to the Hon. Manuel Real, United States

19  District Judge.

20    C.    On June 29, 2018, Steamfitters moved pursuant to Section 21D of the

21  Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(3)(B), as amended by the

22  Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for appointment

23  as lead plaintiff and for the appointment of its counsel, Labaton Sucharow LLP as

24  lead counsel.

25    D.    On August 21, 2018, the Court issued an Order appointing

26  Steamfitters as Lead Plaintiff and approving its selection of Labaton Sucharow

27  LLP as Lead Counsel for the Class.

28

E.     Lead Plaintiff, through Lead Counsel, conducted a thorough investigation relating to the claims, defenses, and underlying events and transactions that are the subject of this Action.  This process included reviewing and analyzing: (i) documents filed publicly by the Company with the U.S. Securities and Exchange Commission ("SEC"); (ii) publicly available information, including press releases, news articles, and other public statements issued by or concerning the Company and Defendants; (iii) research reports issued by financial analysts concerning the Company; (iv) publicly available data concerning Molina common stock; (v) certain internal, nonpublic documents provided to Lead Counsel by former employees of Molina; (vi) documents produced by Defendants in connection with the mediation; and (vii) the applicable law governing the claims and potential defenses.  Lead Counsel also interviewed former Molina employees and other persons with relevant knowledge and consulted with experts on damages and causation issues and healthcare industry information technology (IT) systems.

F.     Steamfitters filed the operative Amended Class Action Complaint (the "Complaint") on October 5, 2018.  The Complaint alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, on behalf of a class of all persons and entities that purchased or otherwise acquired Molina publicly traded common stock during the period from October 31, 2014 through August 2, 2017, inclusive, and were damaged thereby.

G.     Defendants filed a motion to dismiss the Complaint on October 19, 2018.  Lead Plaintiff filed a memorandum of law in opposition to the motion on November 9, 2018.  Defendants filed a reply in support of the motion to dismiss on November 19, 2018.

2

H.     On December 13, 2018, the Court issued an Order granting Defendants' motion and dismissing the Complaint with prejudice.  The Court ruled that Lead Plaintiff failed to sufficiently plead falsity and scienter.

I.     On January 9, 2019, Lead Plaintiff appealed from the Order to the United States Court of Appeals for the Ninth Circuit (the "Court of Appeals"). Lead Plaintiff filed its opening brief and record excerpts on April 24, 2019. Defendants filed their answering brief and supplemental record excerpts on June 24, 2019.  Lead Plaintiff filed its reply brief on August 14, 2019.

J.     On June 26, 2019, during the pendency of the appeal, the Hon. Manuel Real passed away.

K.     After the appeal was fully briefed, Lead Plaintiff and Defendants agreed to engage Michelle Yoshida, Esq. of Phillips ADR, a well-respected and experienced mediator, to assist the Parties in exploring a potential negotiated resolution of the claims asserted in this Action.  On February 27, 2020, the Parties met with Ms. Yoshida in an attempt to reach a settlement.  The mediation involved an extended effort to settle the claims and was preceded by the exchange of mediation statements and the provision of certain nonpublic documents by Molina to Lead Plaintiff.  While these discussions narrowed the differences between Lead Plaintiff and Defendants, the Parties did not reach an accord that day.

L.     On March 1, 2020, the Court of Appeals scheduled oral argument to proceed on May 13, 2020.

M.     Thereafter, on March 5, 2020, following continued arm's-length negotiations facilitated and supervised by Ms. Yoshida, the Parties reached an agreement-in-principle to settle this Action.

N.     On March 19, 2020, the Parties filed a Joint Motion to Vacate Oral Argument and Stay Appeal Pending Settlement with the Court of Appeals ("Joint Motion").  The Joint Motion advised the Court of Appeals that the Parties had reached an agreement-in-principle to settle the Action, and asked the Court of

Appeals to stay the appeal and vacate the May 13, 2020 oral argument date to allow the Parties time to negotiate the formal settlement documents.

O.      On March 26, 2020, the Court of Appeals granted the Joint Motion. The Court of Appeals stayed the appeal until September 18, 2020 or until such time as the District Court grants final approval to the Settlement, whichever comes first.  The Court of Appeals directed the Parties, within seven (7) days after the stay expires, either to voluntarily withdraw the appeal pursuant to Federal Rule of Appellate Procedure 42(b), or file a status report and motion for appropriate relief.

P.      On April 21, 2020, the Parties filed a Joint Motion for Limited Remand Pending Consideration of Proposed Class Action Settlement with the Court of Appeals.  On April 22, 2020, the Court of Appeals granted the motion and remanded the matter to the District Court for the limited purpose of allowing the District Court to consider the Settlement and related matters.  On April 24, 2020, the District Court reassigned this Action to the Hon. André Birotte Jr., United States District Judge.

Q.      Defendants have denied and continue to deny any wrongdoing or that they have committed any act or omission giving rise to any liability or violation of law, including the U.S. securities laws.  Defendants have denied and continue to deny each and every one of the claims alleged by Lead Plaintiff in the Action on behalf of the proposed Settlement Class, including all claims in the Complaint.  For example, Defendants deny the allegations that they knowingly, or otherwise, made any material misstatements or omissions; that any Member of the Settlement Class has suffered damages; that the prices of Molina common stock were artificially inflated by reason of the alleged misrepresentations, omissions, or otherwise; or that the conduct alleged in the Complaint caused any losses allegedly experienced by, or otherwise harmed, any Member of the Settlement Class.  Nonetheless, Defendants have concluded that continuation of the Action would be protracted, time-consuming, and expensive, and that it is desirable that the Action be fully and

finally settled in the manner and upon the terms and conditions set forth in the Settlement Agreement.  Defendants also have taken into account the uncertainty and risks inherent in any litigation, especially a complex case like this Action, and believe that it is desirable and beneficial that the Action be settled in the manner and upon the terms and conditions set forth in the Settlement Agreement.

R.    Lead Plaintiff believes that the claims asserted in the Action have merit and that the information developed to date supports the claims asserted. However, Lead Plaintiff and Lead Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Action through trial and appeals.  They also have taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as the Action, as well as the difficulties and delays inherent in such litigation.  Lead Counsel is mindful of the inherent problems of proof and the possible defenses to the claims alleged in the Action.  Based on their evaluation, Lead Plaintiff and Lead Counsel believe that the Settlement set forth in this Settlement Agreement confers substantial monetary benefits upon the Settlement Class and is in the best interests of Lead Plaintiff and the Settlement Class.

**NOW THEREFORE**, without any concession by Lead Plaintiff that the Action lacks merit, and without any concession by Defendants of any liability or wrongdoing or lack of merit in their defenses, it is hereby **STIPULATED AND AGREED**, by and among the parties to this Settlement Agreement (the "Parties"), through their respective attorneys, subject to approval by the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, that, in consideration of the benefits flowing to the Parties hereto, all Released Claims and all Released Defendants' Claims, as against all Released Parties, shall be fully, finally, and forever compromised, settled, released, discharged, and dismissed with prejudice, and without costs, upon and subject to the following terms and conditions:

## **DEFINITIONS**

1.     As used in this Settlement Agreement, the following terms shall have the meanings set forth below.  In the event of any inconsistency between any definition set forth below and any definition in any other document related to the Settlement, the definition set forth below shall control.

(a)     "Action" means the civil action titled *Steamfitters Local 449 Pension Plan v. Molina Healthcare, Inc.*, *et al.*, Case No. 2:18-cv-03579 AB (JCx) (C.D. Cal.), pending in the United States District Court for the Central District of California.

(b)     "Alternative Judgment" means a form of final judgment that may be entered by the Court but in a form other than the form of Judgment provided for in this Settlement Agreement and where none of the Parties hereto elects to terminate this Settlement by reason of such variance.

(c)     "Authorized Claimant" means a Settlement Class Member who submits a valid Proof of Claim and Release form to the Claims Administrator that is accepted for payment.

(d)     "Claim Form" or "Proof of Claim" mean the Proof of Claim and Release form for submitting a claim, which, subject to approval of the Court, shall be substantially in the form annexed as Exhibit 2 to Exhibit A hereto.

(e)     "Claims Administrator" means the firm to be retained by Lead Counsel, subject to Court approval, to provide all notices approved by the Court to Settlement Class Members, to process proofs of claim, and to administer the Settlement.

(f)     "Class Period" means the period from October 31, 2014 through August 2, 2017, inclusive.

(g)     "Court" or "District Court" means the United States District Court for the Central District of California.

(h)     "Defendants" means Molina Healthcare, Inc., J. Mario Molina, John C. Molina, Terry P. Bayer, and Rick Hopfer.

(i)     "Defendants' Counsel" means the law firms of Latham & Watkins LLP and Cooley LLP.

(j)     "Effective Date" means the date upon which the Settlement shall have become effective, as set forth in Paragraph 38 below.

(k)     "Escrow Account" means the separate escrow account at Citibank, N.A., a national banking institution, established to receive the Settlement Amount for the benefit of the Settlement Class pursuant to this Settlement Agreement and subject to the jurisdiction of the Court.

(l)     "Escrow Agent" means Citibank, N.A.

(m)     "Fee and Expense Application" means Lead Counsel's application, on behalf of all Plaintiffs' Counsel, for an award of attorneys' fees and payment of litigation expenses incurred in prosecuting the case, including any expenses pursuant to 15 U.S.C. § 78u-4(a)(4).

(n)     "Final," with respect to a court order, including a judgment, means the later of: (i) if there is an appeal from a court order, the date of final affirmance on appeal and the expiration of the time for any further judicial review whether by appeal, reconsideration or a petition for a writ of certiorari and, if certiorari is granted, the date of final affirmance of the order following review pursuant to the grant; or (ii) the date of final dismissal of any appeal from the order or the final dismissal of any proceeding on certiorari to review the order; or (iii) the expiration of the time for the filing or noticing of any appeal or petition for certiorari from the order (or, if the date for taking an appeal or seeking review of the order shall be extended beyond this time by order of the issuing court, by operation of law or otherwise, or if such extension is requested, the date of expiration of any extension if any appeal or review is not sought), without any such filing or noticing being made.  However, any appeal or proceeding seeking

1    subsequent judicial review pertaining solely to the Plan of Allocation of the Net

2    Settlement Fund, or to the Court's award of attorneys' fees or expenses, shall not

3    in any way delay or affect the time set forth above for the Judgment or Alternative

4    Judgment to become Final or otherwise preclude the Judgment or Alternative

5    Judgment from becoming Final.

6            (o)    "Individual Defendants" means J. Mario Molina, John C.

7    Molina, Terry P. Bayer, and Rick Hopfer.

8            (p)    "Judgment" means the proposed judgment to be entered by the

9    Court approving the Settlement, substantially in the form annexed hereto as

10   Exhibit B.

11           (q)    "Lead Counsel" means Labaton Sucharow LLP.

12           (r)    "Lead Plaintiff" means Steamfitters Local 449 Pension Plan.

13           (s)    "Liaison Counsel" means Glancy Prongay & Murray LLP.

14           (t)    "Mediator" means Michelle Yoshida, Esq. of Phillips ADR.

15           (u)    "Net Settlement Fund" means the Settlement Fund less: (i)

16   Court-awarded attorneys' fees and expenses; (ii) Notice and Administration

17   Expenses; (iii) Taxes; and (iv) any other fees or expenses approved by the Court.

18           (v)    "Notice" means the Notice of Pendency of Class Action,

19   Proposed Settlement, and Motion for Attorneys' Fees and Expenses to be sent to

20   Settlement Class Members, which, subject to approval of the Court, shall be

21   substantially in the form annexed hereto as Exhibit 1 to Exhibit A hereto.

22           (w)    "Notice and Administration Expenses" means all costs, fees,

23   and expenses incurred in connection with providing notice to the Settlement Class

24   and the administration of the Settlement, including but not limited to: (i) providing

25   notice of the proposed Settlement by mail, publication, and other means to

26   potential Settlement Class Members; (ii) receiving and reviewing claims for

27   payment from the Net Settlement Fund; (iii) applying the Plan of Allocation; (iv)

28   communicating with Persons regarding the proposed Settlement and claims

administration process; (v) distributing the proceeds of the Settlement; and (vi) fees related to the Escrow Account and investment of the Settlement Fund.

(x)     "Person(s)" means any individual, corporation (including all divisions and subsidiaries), general or limited partnership, association, joint stock company, joint venture, limited liability company, professional corporation, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any other business or legal entity.

(y)     "Plaintiffs' Counsel" means the law firms of Labaton Sucharow LLP and Glancy Prongay & Murray LLP.

(z)     "Plan of Allocation" means the proposed Plan of Allocation for distribution of the Net Settlement Fund, which, subject to the approval of the Court, shall be substantially in the form described in the Notice.

(aa)     "Preliminary Approval Order" means the proposed Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date for Hearing on Final Approval of Settlement, which, subject to the approval of the Court, shall be substantially in the form annexed hereto as Exhibit A.

(bb)     "Released Claims" means any and all claims and causes of action of every nature and description, including both known claims and Unknown Claims (defined below), whether arising under federal, state, common or foreign law, or any other law, whether class or individual in nature, that Lead Plaintiff or any other Settlement Class Member (i) asserted in the Action; or (ii) could have asserted in the Action, or in any forum, that arise out of, relate to, or are based upon both (a) the allegations, transactions, facts, events, acts, occurrences, statements, representations and/or omissions alleged in the Action and (b) the purchase or acquisition of Molina publicly traded common stock during the Class Period.  For the avoidance of doubt, Released Claims do not include claims relating to the enforcement of the Settlement.

1             (cc)   "Released Defendant Parties" means Defendants, Defendants'

2   Counsel, and each of their respective past or present subsidiaries, parents,

3   affiliates, principals, successors and predecessors, assigns, officers, directors,

4   shareholders, trustees, partners, agents, fiduciaries, contractors, employees,

5   attorneys, auditors, and insurers; the spouses, members of the immediate families,

6   representatives, and heirs of the Individual Defendants, as well as any trust of

7   which any Individual Defendant is the settlor or which is for the benefit of any of

8   their immediate family members; any firm, trust, corporation, or entity in which

9   any Defendant has a controlling interest; and any of the legal representatives, heirs,

10   successors in interest or assigns of Defendants.

11             (dd)   "Released Defendants' Claims" means all claims and causes of

12   action of every nature and description, including both known claims and Unknown

13   Claims (as defined below), whether arising under federal, state, common or foreign

14   law, or any other law, that Defendants could have asserted against any of the

15   Released Plaintiff Parties that arise out of or relate in any way to the institution,

16   prosecution, or settlement of the claims in the Action, except for claims relating to

17   the enforcement of the Settlement.

18             (ee)   "Released Parties" means the Released Defendant Parties and

19   the Released Plaintiff Parties.

20             (ff)   "Released Plaintiff Parties" means each and every Settlement

21   Class Member, Lead Plaintiff, Lead Counsel, Liaison Counsel, and each of their

22   respective past or present trustees, officers, directors, partners, employees,

23   affiliates, contractors, auditors, principals, agents, attorneys, predecessors,

24   successors, assigns, insurers, parents, subsidiaries, general or limited partners or

25   partnerships, and limited liability companies; and the spouses, members of the

26   immediate families, representatives, and heirs of any Released Plaintiff Party who

27   is an individual, as well as any trust of which any Released Plaintiff Party is the

28   settlor or which is for the benefit of any of their immediate family members.

Released Plaintiff Parties does not include any Person who timely and validly seeks exclusion from the Settlement Class.

(gg)    "Settlement" means the resolution of the Action in accordance with the terms and provisions of this Settlement Agreement.

(hh)    "Settlement Agreement" means this Stipulation and Agreement of Settlement.

(ii)    "Settlement Amount" means the total principal amount of Seven Million Five Hundred Thousand United States dollars ($7,500,000) in cash.

(jj)    "Settlement Class" or "Settlement Class Member" means all persons and entities that purchased or otherwise acquired Molina publicly traded common stock during the period from October 31, 2014 through August 2, 2017, inclusive, and were damaged thereby.  Excluded from the Settlement Class are: (i) the Defendants; (ii) the present and former officers and directors of the Company; (iii) the Company's subsidiaries and affiliates; (iv) the Company's employee retirement and benefit plan(s) and their participants or beneficiaries, to the extent they made purchases through such plan(s); (v) members of the immediate families of the Individual Defendants; (vi) any entity in which any Defendant has or had a controlling interest; and (vii) the legal representatives, heirs, successors, and assigns of any such excluded party.  Also excluded from the Settlement Class will be any Person that timely and validly seeks exclusion from the Settlement Class.

(kk)    "Settlement Fund" means the Settlement Amount and any interest earned thereon.

(ll)    "Settlement Hearing" means the hearing to be held by the Court to determine, among other things, whether the proposed Settlement is fair, reasonable, and adequate and should be approved.

(mm) "Summary Notice" means the Summary Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses

for publication, which, subject to approval of the Court, shall be substantially in the form annexed as Exhibit 3 to Exhibit A hereto.

(nn) "Taxes" means all federal, state, or local taxes of any kind on any income earned by the Settlement Fund and the expenses and costs incurred in connection with the taxation of the Settlement Fund (including, without limitation, interest, penalties and the reasonable expenses of tax attorneys and accountants).

(oo) "Unknown Claims" means any and all Released Claims that Lead Plaintiff or any other Settlement Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Defendant Parties, and any and all Released Defendants' Claims that any Defendant does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Plaintiff Parties, which if known by him, her, or it might have affected his, her, or its decision(s) with respect to the Settlement, including the decision to object to the terms of the Settlement or to exclude himself, herself, or itself from the Settlement Class.  With respect to any and all Released Claims and Released Defendants' Claims, the Parties stipulate and agree that, upon the Effective Date, Lead Plaintiff and Defendants shall expressly, and each other Settlement Class Member shall be deemed to have, and by operation of the Judgment or Alternative Judgment shall have, to the fullest extent permitted by law, expressly waived and relinquished any and all provisions, rights and benefits conferred by any law of any state or territory of the United States or foreign law, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Lead Plaintiff, other Settlement Class Members, or Defendants may hereafter discover facts, legal theories, or authorities in addition to or different from those which any of them now knows or believes to be true with respect to the subject matter of the Released Claims and the Released Defendants' Claims, but Lead Plaintiff and Defendants shall expressly, fully, finally, and forever settle and release, and each Settlement Class Member shall be deemed to have settled and released, and upon the Effective Date and by operation of the Judgment or Alternative Judgment shall have settled and released, fully, finally, and forever, any and all Released Claims and Released Defendants' Claims as applicable, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities.  Lead Plaintiff and Defendants acknowledge, and other Settlement Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims and Released Defendants' Claims was separately bargained for and was a material element of the Settlement.

## SCOPE AND EFFECT OF SETTLEMENT

2.     The obligations incurred pursuant to this Settlement Agreement are (a) subject to approval by the Court and the Judgment, or Alternative Judgment, reflecting such approval becoming Final; and (b) in full and final disposition of the Action with respect to the Released Parties and any and all Released Claims and Released Defendants' Claims.

3.     For purposes of this Settlement only, the Parties agree to: (i) certification of the Action as a class action, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), on behalf of the Settlement Class as defined in Paragraph 1(jj) above; (ii) the appointment of Lead Plaintiff as Class Representative for the Settlement Class; and (iii) the appointment of Lead Counsel as Class Counsel for the Settlement Class pursuant to Fed. R. Civ. P. 23(g).

4.      By operation of the Judgment or Alternative Judgment, as of the Effective Date, Lead Plaintiff and each and every other Settlement Class Member, on behalf of themselves and each of their respective heirs, executors, trustees, administrators, predecessors, successors, and assigns, in their capacities as such, shall be deemed to have fully, finally, and forever waived, released, discharged, and dismissed each and every one of the Released Claims against each and every one of the Released Defendant Parties and shall forever be barred and enjoined from commencing, instituting, prosecuting, or maintaining any and all of the Released Claims against any and all of the Released Defendant Parties.

5.      By operation of the Judgment or Alternative Judgment, as of the Effective Date, Defendants, on behalf of themselves and each of their respective heirs, executors, trustees, administrators, predecessors, successors, and assigns, in their capacities as such, shall be deemed to have fully, finally, and forever waived, released, discharged, and dismissed each and every one of the Released Defendants' Claims against each and every one of the Released Plaintiff Parties and shall forever be barred and enjoined from commencing, instituting, prosecuting, or maintaining any and all of the Released Defendants' Claims against any and all of the Released Plaintiff Parties.

### **THE SETTLEMENT CONSIDERATION**

6.      In full settlement of the claims asserted in the Action against Defendants and in consideration of the releases specified in Paragraphs 4 and 5 above, all of which the Parties agree are good and valuable consideration, Defendants shall pay, or cause to be paid, the Settlement Amount into the Escrow Account within twenty (20) business days of the later of (i) the date of entry of the Preliminary Approval Order and (ii) Labaton Sucharow LLP providing to Defendants' Counsel the information necessary to effectuate a transfer of funds to the Escrow Account, including but not limited to, wire transfer instructions,

payment address, and a complete and executed Form W-9 for the Settlement Fund that reflects a valid tax identification number.

7. With the sole exception of Defendants' obligation to secure payment of the Settlement Amount into the Escrow Account as provided for in Paragraph 6 above, and Molina's obligations pursuant to Paragraphs 21 and 36 below, Defendants and Defendants' Counsel shall have no responsibility for, interest in, or liability whatsoever with respect to: (i) any act, omission, or determination by Lead Counsel or the Claims Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment, or distribution of the Settlement Fund; (iii) the Plan of Allocation; (iv) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (v) any loss suffered by, or fluctuation in value of, the Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund, distributions or other payments from the Escrow Account, or the filing of any federal, state, or local returns.

8. Other than the obligation of Defendants to cause the payment of the Settlement Amount pursuant to Paragraph 6 above, Defendants shall have no obligation to make any other payments into the Escrow Account or to any Settlement Class Member pursuant to this Settlement Agreement.

## **USE AND TAX TREATMENT OF SETTLEMENT FUND**

9. The Settlement Fund shall be used: (i) to pay any Taxes; (ii) to pay Notice and Administration Expenses; (iii) to pay any attorneys' fees and expenses awarded by the Court; (iv) to pay any other fees and expenses awarded by the Court; and (v) to pay the claims of Authorized Claimants.

10. The Net Settlement Fund shall be distributed to Authorized Claimants as provided in Paragraphs 22-34 below. The Net Settlement Fund shall remain in the Escrow Account prior to the Effective Date. All funds held in the Escrow

Account, and all earnings thereon, shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall have been disbursed or returned, pursuant to the terms of this Settlement Agreement, and/or further order of the Court.  The Escrow Agent shall invest funds in the Escrow Account in instruments backed by the full faith and credit of the United States Government (or a mutual fund invested solely in such instruments), or deposit some or all of the funds in non-interest-bearing transaction account(s) that are fully insured by the Federal Deposit Insurance Corporation ("FDIC") in amounts that are up to the limit of FDIC insurance.  Defendants and Defendants' Counsel shall have no responsibility for, interest in, or liability whatsoever with respect to investment decisions executed by the Escrow Agent. All risks related to the investment of the Settlement Fund shall be borne solely by the Settlement Fund.

11.     After the Settlement Amount has been paid into the Escrow Account, the Parties agree to treat the Settlement Fund as a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.  All provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Settlement Amount being a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.  In addition, Lead Counsel shall timely make, or cause to be made, such elections as necessary or advisable to carry out the provisions of this Paragraph 11, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date.  Such election shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of Lead Counsel to timely and properly prepare and deliver, or cause to be prepared and delivered, the necessary documentation for signature by all necessary parties, and thereafter take all such actions as may be necessary or appropriate to cause the appropriate filing(s) to timely occur.  Consistent with the foregoing:

16

(a)     For the purposes of Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. § 1.468B promulgated thereunder, the "administrator" shall be Lead Counsel or its successors, who shall timely and properly file, or cause to be filed, all federal, state, or local tax returns and information returns (together, "Tax Returns") necessary or advisable with respect to the earnings on the funds deposited in the Escrow Account (including without limitation the returns described in Treas. Reg. § 1.468B-2(k)).  Such Tax Returns (as well as the election described above) shall be consistent with this subparagraph and in all events shall reflect that all Taxes (including any estimated taxes, earnings, or penalties) on the income earned on the funds deposited in the Escrow Account shall be paid out of such funds as provided in subparagraph (c) of this Paragraph 11.

(b)     All Taxes shall be paid out of the Settlement Fund.  In all events, Defendants and Defendants' Counsel shall have no liability or responsibility whatsoever for the Taxes or the filing of any Tax Return or other document with the Internal Revenue Service or any other state or local taxing authority.  Defendants shall have no liability or responsibility for the Taxes of the Escrow Account with respect to the Settlement Amount nor the filing of any Tax Returns or other documents with the Internal Revenue Service or any other taxing authority.  In the event any Taxes are owed by any of the Defendants on any earnings on the funds on deposit in the Escrow Account, such amounts shall also be paid out of the Settlement Fund.

(c)     Taxes with respect to the Settlement Amount and the Escrow Account shall be treated as, and considered to be, a cost of administration of the Settlement and shall be timely paid, or caused to be paid, by Lead Counsel out of the Settlement Fund without prior order from the Court or approval by Defendants. The Claims Administrator shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds

necessary to pay such amounts (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(l)(2)).  The Parties agree to cooperate with each other, and their tax attorneys and accountants to the extent reasonably necessary, to carry out the provisions of this Paragraph 11.

12.    This is not a claims-made settlement.  As of the Effective Date, Defendants, and/or any other Person funding the Settlement on a Defendant's behalf, shall not have any right to the return of the Settlement Fund or any portion thereof for any reason.

## ATTORNEYS' FEES AND EXPENSES

13.    Lead Counsel, on behalf of all Plaintiffs' Counsel, will apply to the Court for an award from the Settlement Fund of attorneys' fees and payment of litigation expenses incurred in prosecuting the Action, including reimbursement to Lead Plaintiff pursuant to the PSLRA, plus earnings on such amounts at the same rate and for the same periods as earned by the Settlement Fund.  Defendants shall take no position with respect to any Fee and Expense Application.

14.    The amount of attorneys' fees and expenses awarded by the Court is within the sole discretion of the Court.  Any attorneys' fees and expenses awarded by the Court shall be paid from the Settlement Fund to Lead Counsel immediately after entry of the Order awarding such attorneys' fees and expenses and entry of the Judgment or Alternative Judgment, notwithstanding the existence of any timely filed objections thereto or to the Settlement, or potential for appeal therefrom, or collateral attack on the Fee and Expense Application, the Settlement, or any part thereof.  Lead Counsel shall allocate any Court-awarded attorneys' fees and expenses among Plaintiffs' Counsel.

15.    Any payment of attorneys' fees and expenses pursuant to Paragraphs 13 and 14 above shall be subject to Lead Counsel's obligation to make refunds or repayments to the Settlement Fund of any paid amounts, plus accrued earnings at the same net rate as is earned by the Settlement Fund, if the Settlement is

terminated pursuant to the terms of this Settlement Agreement or fails to become effective for any reason, or if, as a result of any appeal or further proceedings on remand or successful collateral attack, the award of attorneys' fees and/or expenses is reduced or reversed by Final non-appealable court order.  Lead Counsel shall make the appropriate refund or repayment in full no later than thirty (30) calendar days after receiving notice of the termination of the Settlement pursuant to this Settlement Agreement, notice from a court of appropriate jurisdiction of the disapproval of the Settlement by Final non-appealable court order, or notice of any reduction or reversal of the award of attorneys' fees and/or expenses by Final non-appealable court order.

16.     With the sole exception of Defendants' obligation to pay the Settlement Amount into the Escrow Account as provided for in Paragraph 6 above, Defendants shall have no responsibility for, and no liability whatsoever with respect to, any payment whatsoever to Plaintiffs' Counsel in the Action that may occur at any time.

17.     Defendants shall have no responsibility for, and no liability whatsoever with respect to, any allocation of any attorneys' fees or expenses among Plaintiffs' Counsel in the Action, or to any other Person who may assert some claim thereto, or any fee or expense awards the Court may make in the Action.

18.     Defendants shall have no responsibility for, and no liability whatsoever with respect to, any attorneys' fees, costs, or expenses incurred by or on behalf of Settlement Class Members, whether or not paid from the Escrow Account.  The Settlement Fund will be the sole source of payment from Defendants for any award of attorneys' fees and expenses ordered by the Court.

19.     The procedure for and the allowance or disallowance by the Court of any Fee and Expense Application are not part of the Settlement set forth in this Settlement Agreement, and any order or proceeding relating to any Fee and

Expense Application, including an award of attorneys' fees or expenses in an amount less than the amount requested by Lead Counsel, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Settlement Agreement, or affect or delay the finality of the Judgment or Alternative Judgment approving the Settlement Agreement and the Settlement set forth herein.  Lead Plaintiff and Lead Counsel may not cancel or terminate the Settlement Agreement or the Settlement in accordance with Paragraph 39 below or otherwise based on the Court's or any appellate court's ruling with respect to fees and expenses in the Action.

## NOTICE AND ADMINISTRATION EXPENSES

20.     Except as otherwise provided herein, the Net Settlement Fund shall be held in the Escrow Account until the Effective Date.

21.     Prior to the Effective Date, without further approval from Defendants or further order of the Court, Lead Counsel may expend up to $500,000 from the Settlement Fund to pay Notice and Administration Expenses actually incurred. Additional sums for this purpose prior to the Effective Date may be paid from the Settlement Fund upon agreement of the Parties or order of the Court.  Taxes and fees related to the Escrow Account and investment of the Settlement Fund may be paid as incurred, without further approval of Defendants or further order of the Court.  After the Effective Date, without approval of Defendants or further order of the Court, Notice and Administration Expenses may be paid as incurred. Defendants shall be responsible for providing any required notice under the Class Action Fairness Act of 2005, if any, at their own expense.

## DISTRIBUTION TO AUTHORIZED CLAIMANTS

22.     The Claims Administrator, subject to such supervision and direction of Lead Counsel and/or the Court as may be necessary or as circumstances may require, shall administer the Settlement in accordance with the terms of this Settlement Agreement, the Court-approved Plan of Allocation, and subject to the

jurisdiction of the Court.  Defendants and Defendants' Counsel shall have no responsibility for (except as stated in Paragraphs 6 and 36 hereof), interest in, or liability whatsoever with respect to the administration of the Settlement or the actions or decisions of the Claims Administrator, and shall have no liability to the Settlement Class in connection with such administration.

23.     The Claims Administrator shall determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's recognized loss, as defined in the Plan of Allocation included in the Notice, or in such other plan of allocation as the Court may approve.

24.     Defendants have no role in the development of, and will take no position with respect to, the Plan of Allocation.  Any decision by the Court concerning the Plan of Allocation shall not affect the validity or finality of the proposed Settlement.  The Plan of Allocation is not a necessary term of this Settlement Agreement and it is not a condition of this Settlement Agreement that any particular plan of allocation be approved by the Court.  Lead Plaintiff and Lead Counsel may not cancel or terminate the Settlement Agreement or the Settlement in accordance with Paragraph 39 below or otherwise based on the Court's or any appellate court's ruling with respect to the Plan of Allocation or any plan of allocation in the Action.  Defendants and Defendants' Counsel shall have no responsibility or liability for reviewing or challenging claims, the allocation of the Net Settlement Fund, or the distribution of the Net Settlement Fund.

25.     Upon the Effective Date and thereafter, and in accordance with the terms of the Settlement Agreement, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants.

26.     If there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise) after at least six (6) months from the date of initial distribution of the Net Settlement Fund, the Claims

Administrator shall, if feasible and economical after payment of Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, if any, redistribute such balance among Authorized Claimants who have cashed their checks in an equitable and economic fashion.  Once it is no longer feasible or economical to make further distributions, any balance that still remains in the Net Settlement Fund after re-distribution(s) and after payment of outstanding Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, if any, shall be contributed to a non-sectarian, not-for-profit charitable organization serving the public interest designated by Lead Plaintiff and approved by the Court.

## **ADMINISTRATION OF THE SETTLEMENT**

27.     Any Settlement Class Member who fails to timely submit a valid Claim Form (substantially in the form of Exhibit 2 to Exhibit A) will not be entitled to receive any of the proceeds from the Net Settlement Fund, except as otherwise ordered by the Court, but will otherwise be bound by all of the terms of this Settlement Agreement and the Settlement, including the terms of the Judgment or Alternative Judgment to be entered in the Action and all releases provided for herein, and will be barred from bringing any action against the Released Defendant Parties concerning the Released Claims.

28.     Lead Counsel shall be responsible for supervising the administration of the Settlement and disbursement of the Net Settlement Fund by the Claims Administrator.  Lead Counsel shall have the right, but not the obligation, to advise the Claims Administrator to waive what Lead Counsel deems to be *de minimis* or formal or technical defects in any Claim Form submitted.  Defendants and Defendants' Counsel shall have no liability, obligation or responsibility for the administration of the Settlement, the allocation of the Net Settlement Fund, or the reviewing or challenging of claims.  Lead Counsel shall be solely responsible for designating the Claims Administrator, subject to approval by the Court.

29.     For purposes of determining the extent, if any, to which a claimant shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

(a)     Each claimant shall be required to submit a Claim Form, substantially in the form annexed hereto as Exhibit 2 to Exhibit A, supported by such documents as are designated therein, including proof of the claimant's loss, or such other documents or proof as the Claims Administrator or Lead Counsel, in their discretion, may deem acceptable;

(b)     All Proofs of Claim must be submitted by the date set by the Court in the Preliminary Approval Order and specified in the Notice, unless such deadline is extended by Lead Counsel in its discretion or by Order of the Court. Any Settlement Class Member who fails to submit a Claim Form by such date shall be barred from receiving any distribution from the Net Settlement Fund or payment pursuant to this Settlement Agreement (unless, by Order of the Court or the discretion of Lead Counsel, late-filed Proofs of Claim are accepted), but shall in all other respects be bound by all of the terms of this Settlement Agreement and the Settlement, including the terms of the Judgment or Alternative Judgment and all releases provided for herein, and will be permanently barred and enjoined from bringing any action, claim or other proceeding of any kind against any Released Defendant Party.  A Claim Form shall be deemed to be submitted when mailed, if received with a postmark on the envelope and if mailed by first-class or overnight U.S. Mail and addressed in accordance with the instructions thereon.  In all other cases, the Claim Form shall be deemed to have been submitted when actually received by the Claims Administrator;

(c)     Each Claim Form shall be submitted to and reviewed by the Claims Administrator, under the supervision of Lead Counsel, which shall determine in accordance with this Settlement Agreement the extent, if any, to which each claim shall be allowed;

1        (d)     Proofs of Claim that do not meet the submission requirements

2  may be rejected.  Prior to rejecting a Claim Form in whole or in part, the Claims

3  Administrator shall communicate with the claimant in writing to give the claimant

4  the chance to remedy any curable deficiencies in the Claim Form submitted.  The

5  Claims Administrator, under supervision of Lead Counsel, shall notify, in a timely

6  fashion and in writing, all claimants whose claims the Claims Administrator

7  proposes to reject in whole or in part for curable deficiencies, setting forth the

8  reasons therefor, and shall indicate in such notice that the claimant whose claim is

9  to be rejected has the right to a review by the Court if the claimant so desires and

10  complies with the requirements of subparagraph (e) below; and

11        (e)     If any claimant whose timely claim has been rejected in whole

12  or in part for curable deficiency desires to contest such rejection, the claimant

13  must, within twenty (20) calendar days after the date of mailing of the notice

14  required in subparagraph (d) above, or a lesser period of time if the claim was

15  untimely, serve upon the Claims Administrator a notice and statement of reasons

16  indicating the claimant's grounds for contesting the rejection along with any

17  supporting documentation, and requesting a review thereof by the Court.  If a

18  dispute concerning a claim cannot be otherwise resolved, Lead Counsel shall

19  thereafter present the request for review to the Court.

20       30.    Each claimant who submits a Claim Form shall be deemed to have

21  submitted to the jurisdiction of the Court with respect to the claimant's claim,

22  including but not limited to, all releases provided for herein and in the Judgment or

23  Alternative Judgment, and the claim will be subject to investigation and discovery

24  under the Federal Rules of Civil Procedure, provided that such investigation and

25  discovery shall be limited to the claimant's status as a Settlement Class Member

26  and the validity and amount of the claimant's claim.  In connection with processing

27  the Proofs of Claim, no discovery shall be allowed on the merits of the Action or

28  the Settlement.

31.     Payment pursuant to the Settlement Agreement and Court-approved Plan of Allocation shall be deemed final and conclusive against any and all claimants.  All Settlement Class Members whose claims are not approved shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Settlement Agreement and the Settlement, including the terms of the Judgment or Alternative Judgment to be entered in the Action and the releases provided for herein and therein, and will be barred from bringing any action against the Released Defendant Parties concerning the Released Claims.

32.     All proceedings with respect to the administration, processing and determination of claims described by this Settlement Agreement and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of the Court, but shall not in any event delay or affect the finality of the Judgment or Alternative Judgment.

33.     No Person shall have any claim of any kind against the Released Defendant Parties or Defendants' Counsel with respect to the matters set forth in this section (*i.e.*, Paragraphs 27-34) or any of its subsections, or otherwise related in any way to the administration of the Settlement, including without limitation the processing of claims and distributions.

34.     No Person shall have any claim against Lead Plaintiff, Lead Counsel, or the Claims Administrator, or other agent designated by Lead Counsel, based on the distributions made substantially in accordance with this Settlement Agreement and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court.

### **TERMS OF THE PRELIMINARY APPROVAL ORDER**

35.     Concurrently with their application for preliminary approval by the Court of the Settlement contemplated by this Settlement Agreement and promptly

upon execution of this Settlement Agreement, Lead Counsel shall apply to the Court for entry of the Preliminary Approval Order, which shall be substantially in the form annexed hereto as Exhibit A.  The Preliminary Approval Order will, *inter alia*, preliminarily approve the Settlement, set the date for the Settlement Hearing, approve the form of notice, and prescribe the method for giving notice of the Settlement to the Settlement Class.

36.    Molina shall provide, or cause to be provided, to Lead Counsel or the Claims Administrator, at no cost to Lead Plaintiff or the Settlement Class, within five (5) business days of entry of the Preliminary Approval Order, transfer records in electronic searchable form, such as Excel, containing the names and addresses of shareholders of record who purchased or acquired the common stock of Molina during the Class Period.

## TERMS OF THE JUDGMENT

37.    If the Settlement contemplated by this Settlement Agreement is approved by the Court, Lead Counsel and Defendants' Counsel shall jointly request that the Court enter a Judgment substantially in the form annexed hereto as Exhibit B.

## EFFECTIVE DATE OF SETTLEMENT

38.    The Effective Date of this Settlement shall be the first business day on which all of the following shall have occurred or been waived:

(a)    entry of the Preliminary Approval Order, which shall be in all material respects substantially in the form set forth in Exhibit A annexed hereto;

(b)    payment of the Settlement Amount into the Escrow Account;

(c)    approval by the Court of the Settlement, following notice to the Settlement Class and the Settlement Hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure; and

(d)    a Judgment, which shall be in all material respects substantially in the form set forth in Exhibit B annexed hereto, has been entered by the Court

1  and has become Final; or in the event that an Alternative Judgment has been

2  entered, the Alternative Judgment has become Final.

3  **WAIVER OR TERMINATION**

4  39.    Defendants and Lead Plaintiff shall have the right to terminate the

5  Settlement and this Settlement Agreement by providing written notice of their

6  election to do so ("Termination Notice"), through counsel, to all other Parties

7  hereto within fourteen (14) calendar days of: (i) the Court's Final refusal to enter

8  the Preliminary Approval Order in any material respect; (ii) the Court's Final

9  refusal to approve this Settlement Agreement or any material part of it; (iii) the

10  Court's Final refusal to enter (a) the Judgment in any material respect or (b) an

11  Alternative Judgment; or (iv) the date upon which the Judgment or Alternative

12  Judgment is modified or reversed in any material respect by a Final order of the

13  Court, the United States Court of Appeals for the Ninth Circuit, or the Supreme

14  Court of the United States.  For the avoidance of doubt, Lead Plaintiff shall not

15  have the right to terminate the Settlement due to any decision, ruling, or order

16  respecting the Fee and Expense Application or any plan of allocation.

17  40.    In addition to the foregoing, Defendants shall also have the right to

18  withdraw from the Settlement in the event the Termination Threshold (defined

19  below) has been reached.  Simultaneously herewith, Defendants' Counsel and

20  Lead Counsel are executing a confidential Supplemental Agreement Regarding

21  Requests for Exclusion ("Supplemental Agreement").  The Supplemental

22  Agreement sets forth certain conditions under which Defendants shall have the sole

23  option, which must be exercised unanimously, to terminate the Settlement and

24  render this Settlement Agreement null and void in the event that requests for

25  exclusion from the Settlement Class exceed certain agreed-upon criteria (the

26  "Termination Threshold").  The Parties agree to maintain the confidentiality of the

27  Supplemental Agreement, which shall not be filed with the Court unless a dispute

28  arises as to its terms, or as otherwise ordered by the Court, nor shall the

27

Supplemental Agreement otherwise be disclosed unless ordered by the Court.  If submission of the Supplemental Agreement is required for resolution of a dispute or is otherwise ordered by the Court, the Parties will undertake to have the Termination Threshold submitted to the Court *in camera* or under seal.  In the event of a termination of this Settlement pursuant to the Supplemental Agreement, this Settlement Agreement shall become null and void and of no further force and effect, with the exception of the provisions of Paragraphs 45-47 which shall continue to apply.

41.     The Preliminary Approval Order, annexed hereto as Exhibit A, shall provide that requests for exclusion shall be received no later than twenty-one (21) calendar days prior to the Settlement Hearing.  Upon receiving any request for exclusion pursuant to the Notice, Lead Counsel shall promptly, and certainly no later than five (5) calendar days after receiving a request for exclusion or fifteen (15) calendar days prior to the Settlement Hearing, whichever is earlier, notify Defendants' Counsel of such request for exclusion and provide copies of such request for exclusion and any documentation accompanying it by e-mail.

42.     In addition to all of the rights and remedies that Lead Plaintiff have under the terms of this Settlement Agreement, Lead Plaintiff shall also have the right to terminate the Settlement in the event that the Settlement Amount has not been paid in the time period provided for in Paragraph 6 above, by providing written notice of the election to terminate to all other Parties and, thereafter, there is a failure to pay the Settlement Amount within fourteen (14) calendar days of such written notice.

43.     If, before the Settlement become Final, any Defendant files for protection under the Bankruptcy Code or any similar law or a trustee, receiver, conservator, or other fiduciary is appointed under Bankruptcy, or any similar law, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money or any portion thereof to the Settlement Fund by

or on behalf of such Defendant to be a preference, voidable transfer, fraudulent transfer or similar transaction and any portion thereof is required to be returned, and such amount is not promptly deposited into the Settlement Fund by others, then, at the election of Lead Plaintiff, the Parties shall jointly move the Court to vacate and set aside the release given and the Judgment or Alternative Judgment entered in favor of that Defendant and that Defendant and Lead Plaintiff and the members of the Settlement Class shall be restored to their litigation positions immediately prior to March 5, 2020.  All releases and the Judgment or Alternative Judgment as to other Defendants shall remain unaffected.  Defendants each warrant, as to themselves and the payments made on their respective behalves, that, at the time of such payment, each will not be insolvent, nor will payment render each insolvent, within the meaning of and/or for the purposes of the United States Bankruptcy Code, including Sections 101 and 547 thereof.

44.     If an option to withdraw from and terminate this Settlement Agreement and Settlement arises under any of Paragraphs 39-43 above: (i) neither Defendants nor Lead Plaintiff (as the case may be) will be required for any reason or under any circumstance to exercise that option; and (ii) any exercise of that option shall be made in good faith, but in the sole and unfettered discretion of Defendants or Lead Plaintiff, as applicable.

45.     With the exception of the provisions of Paragraphs 45-47 which shall continue to apply, in the event the Settlement is terminated as set forth herein or cannot become effective for any reason, then the Settlement shall be without prejudice, and none of its terms shall be effective or enforceable except as specifically provided herein; the Parties shall be deemed to have reverted to their respective litigation positions in the Action immediately prior to March 5, 2020; and, except as specifically provided herein, the Parties shall proceed in all respects as if this Settlement Agreement and any related order had not been entered.  In such event, this Settlement Agreement, and any aspect of the discussions or

negotiations leading to this Settlement Agreement shall not be admissible in this Action and shall not be used against or to the prejudice of Defendants or against or to the prejudice of Lead Plaintiff, in any court filing, deposition, at trial, or otherwise.

46.     In the event the Settlement is terminated or fails to become effective for any reason, any portion of the Settlement Amount previously paid, together with any earnings thereon, less any Taxes paid or due, less Notice and Administration Expenses actually incurred and paid or payable from the Settlement Amount, shall be returned to the Person(s) that made the deposit(s) within twenty (20) business days after written notification of such event in accordance with instructions provided by Defendants' Counsel to Lead Counsel.  At the request of Defendants' Counsel, Lead Counsel or its designees shall apply for any tax refund owed on the amounts in the Escrow Account and pay the proceeds, after any deduction of any fees or expenses incurred in connection with such application(s), of such refund to the Person(s) that made the deposits or as otherwise directed.

## NO ADMISSION

47.     Except as set forth in Paragraph 48 below, this Settlement Agreement, whether or not consummated, and whether or not approved by the Court, and any discussion, negotiation, proceeding, or agreement relating to the Settlement Agreement, the Settlement, and any matter arising in connection with settlement discussions or negotiations, proceedings, or agreements, shall not be offered or received against or to the prejudice of the Parties or their respective counsel, for any purpose other than in an action to enforce the terms hereof, and in particular:

(a)     do not constitute, and shall not be offered or received against or to the prejudice of Defendants as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by Defendants with respect to the truth of any allegation by Lead Plaintiff and the Settlement Class, or the validity of any claim that has been or could have been asserted in the Action or in

any litigation, including but not limited to the Released Claims, or of any liability, damages, negligence, fault or wrongdoing of Defendants or any person or entity whatsoever;

(b)     do not constitute, and shall not be offered or received against or to the prejudice of Defendants as evidence of a presumption, concession, or admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by Defendants, or against or to the prejudice of Lead Plaintiff, or any other member of the Settlement Class as evidence of any infirmity in the claims of Lead Plaintiff, or the other members of the Settlement Class;

(c)     do not constitute, and shall not be offered or received against or to the prejudice of Defendants, Lead Plaintiff, any other member of the Settlement Class, or their respective counsel, as evidence of a presumption, concession, or admission with respect to any liability, damages, negligence, fault, infirmity, or wrongdoing, or in any way referred to for any other reason against or to the prejudice of any of the Defendants, Lead Plaintiff, other members of the Settlement Class, or their respective counsel, in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Settlement Agreement;

(d)     do not constitute, and shall not be construed against Defendants, Lead Plaintiff, or any other member of the Settlement Class, as an admission or concession that the consideration to be given hereunder represents the amount that could be or would have been recovered after trial; and

(e)     do not constitute, and shall not be construed as or received in evidence as an admission, concession, or presumption against Lead Plaintiff, or any other member of the Settlement Class that any of their claims are without merit or infirm or that damages recoverable under the Complaint would not have exceeded the Settlement Amount.

48.     Notwithstanding Paragraph 47 above, the Parties, and their respective counsel, may file this Settlement Agreement and/or the Judgment or Alternative Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, statute of limitations, statute of repose, good-faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim, or to effectuate any liability protection granted them under any applicable insurance policy.  The Parties may file this Settlement Agreement and/or the Judgment or Alternative Judgment in any action that may be brought to enforce the terms of this Settlement Agreement and/or the Judgment or Alternative Judgment.  All Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement.

## **MISCELLANEOUS PROVISIONS**

49.     All of the exhibits to the Settlement Agreement, except any plan of allocation to the extent incorporated in those exhibits, and the Supplemental Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

50.     The Parties intend the Settlement to be the full, final, and complete resolution of all claims asserted or that could have been asserted by the Parties with respect to the Released Claims and Released Defendants' Claims. Accordingly, the Parties agree not to assert in any forum that the Action was brought, prosecuted, or defended in bad faith or without a reasonable basis.  The Parties and their respective counsel agree that each has complied fully with Rule 11 of the Federal Rules of Civil Procedure in connection with the maintenance, prosecution, defense, and settlement of the Action and shall not make any application for sanctions, pursuant to Rule 11 or other court rule or statute, with respect to any claim or defense in this Action.  The Parties agree that the amount paid and the other terms of the Settlement were negotiated at arm's-length and in

good faith by the Parties and their respective counsel and reflect a settlement that was reached voluntarily based upon adequate information and after consultation with experienced legal counsel.

51.     This Settlement Agreement, along with its exhibits and the Supplemental Agreement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by counsel for the Parties hereto, or their successors, that are materially and adversely affected by the modification, amendment, or waiver.

52.     The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

53.     The administration and consummation of the Settlement as embodied in this Settlement Agreement shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and any expenses, and implementing and enforcing the terms of this Settlement Agreement.

54.     The waiver by one Party of any breach of this Settlement Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Settlement Agreement.

55.     This Settlement Agreement, its exhibits, and the Supplemental Agreement constitute the entire agreement among the Parties concerning the Settlement as against the Defendants, and no representation, warranty, or inducement has been made by any Party concerning this Settlement Agreement and its exhibits other than those contained and memorialized in such documents.

56.     Nothing in the Settlement Agreement, or the negotiations relating thereto, is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, attorney-client privilege, joint defense privilege, or work product protection.

57.     Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of this Settlement Agreement.

58.     All designations and agreements made, or orders entered during the course of the Action relating to the confidentiality of documents or information shall survive this Settlement Agreement.

59.     This Settlement Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  Signatures sent by facsimile or via e-mail in pdf format shall be deemed originals.

60.     This Settlement Agreement shall be binding when signed, but the Settlement shall be effective upon the entry of the Judgment or Alternative Judgment and the payment in full of the Settlement Amount, subject only to the condition that the Effective Date will have occurred.

61.     This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties.

62.     The construction, interpretation, operation, effect, and validity of this Settlement Agreement, and all documents necessary to effectuate it, shall be governed by the laws of the State of California without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

63.     This Settlement Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations among the Parties, and all Parties have contributed substantially and materially to the preparation of this Settlement Agreement.

64.     All counsel and any other person executing this Settlement Agreement and any of the exhibits hereto, or any related Settlement document, warrant and

represent that they have the full authority to do so, and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Settlement Agreement to effectuate its terms.

65.     The Parties and their respective counsel agree to cooperate fully with one another in promptly applying for preliminary approval by the Court of the Settlement and for the scheduling of a hearing for consideration of Final approval of the Settlement and Lead Counsel's Fee and Expense Application, and to agree promptly upon and execute all such other documentation as reasonably may be required to obtain Final approval by the Court of the Settlement.

66.     If any disputes arise out of the finalization of the settlement documentation or the Settlement itself prior to joint submission to the Court of the application for preliminary approval of the Settlement as set forth in Paragraph 35 above, those disputes will be resolved by the Mediator first by way of expedited telephonic mediation and, if unsuccessful, then by way of final, binding, non-appealable arbitration.

67.     Except as otherwise provided herein, each Party shall bear its own costs.

**IN WITNESS WHEREOF**, the Parties have caused this Settlement Agreement to be executed, by their duly authorized attorneys, as of May 5, 2020.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LABATON SUCHAROW LLP

By: _____
Jonathan Gardner
David J. Goldsmith
Christine M. Fox
Theodore J. Hawkins
140 Broadway
New York, NY 10005
(212) 907-0700
(212) 818-0477 (fax)
jgardner@labaton.com
dgoldsmith@labaton.com
cfox@labaton.com
thawkins@labaton.com

*Lead Counsel for Lead Plaintiff
Steamfitters Local 449 Pension Plan
and the Settlement Class*

LATHAM & WATKINS LLP

By: _____
Manuel A. Abascal
Robert W. Perrin
Alexandra Helene Gianelli
LATHAM & WATKINS LLP
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071-1560
(213) 485-1234
(213) 891-8763 (fax)
manny.abascal@lw.com
robert.perrin@lw.com
alexandra.gianelli@lw.com

Melissa Arbus Sherry
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200
(202) 637-2201 (fax)
melissa.sherry@lw.com

*Counsel for Defendants Molina Healthcare,
Inc., Terry P. Bayer, and Rick Hopfer*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LABATON SUCHAROW LLP


By: _____

Jonathan Gardner
David J. Goldsmith
Christine M. Fox
Theodore J. Hawkins
140 Broadway
New York, NY 10005
(212) 907-0700
(212) 818-0477 (fax)
jgardner@labaton.com
dgoldsmith@labaton.com
cfox@labaton.com
thawkins@labaton.com

*Lead Counsel for Lead Plaintiff*
*Steamfitters Local 449 Pension Plan*
*and the Settlement Class*

LATHAM & WATKINS LLP


By: _____

Manuel A. Abascal
Robert W. Perrin
Alexandra Helene Gianelli
LATHAM & WATKINS LLP
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071-1560
(213) 485-1234
(213) 891-8763 (fax)
manny.abascal@lw.com
robert.perrin@lw.com
alexandra.gianelli@lw.com

Melissa Arbus Sherry
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200
(202) 637-2201 (fax)
melissa.sherry@lw.com

*Counsel for Defendants Molina Healthcare,*
*Inc., Terry P. Bayer, and Rick Hopfer*

36

COOLEY LLP

By: _____
John C. Dwyer
Shannon M. Eagan
Jeffrey D. Lombard
Jessie A.R. Simpson LaGoy
3175 Hanover Street
Palo Alto, CA 94304
(650) 843-5000
(650) 849-7400 (fax)
dwyerjc@cooley.com
seagan@cooley.com
jlombard@cooley.com
jsimpsonlagoy@cooley.com

*Counsel for Defendants
J. Mario Molina and John C. Molina*

37