# EXHIBIT A-1

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| STEAMFITTERS LOCAL 449 PENSION PLAN, Individually and on Behalf of all Others Similarly Situated,<br><br>Plaintiff,<br><br>    vs.<br><br>MOLINA HEALTHCARE, INC., J. MARIO MOLINA, JOHN C. MOLINA, TERRY P. BAYER and RICK HOPFER,<br><br>Defendants. | Case No. 2:18-cv-03579 AB (JCx)<br><br><u>CLASS ACTION</u> |

**NOTICE OF PENDENCY OF CLASS ACTION, PROPOSED SETTLEMENT, AND MOTION FOR ATTORNEYS' FEES AND EXPENSES**

**If you purchased or otherwise acquired the publicly traded common stock of Molina Healthcare, Inc. during the period from October 31, 2014 through August 2, 2017, inclusive (the "Class Period"), and were damaged thereby, you may be entitled to a payment from a class action settlement.**

*A Federal Court authorized this Notice.  This is not a solicitation from a lawyer.*

- The purpose of this Notice is to inform you of: (i) the pendency of the above-captioned securities class action (the "Action"); (ii) the proposed settlement of the Action (the "Settlement") on the terms and conditions provided for in the Stipulation and Agreement of Settlement, dated May 5, 2020 (the "Settlement Agreement");[1] and (iii) the hearing to be held by the Court (the "Settlement Hearing").  At the Settlement Hearing, the Court will consider: (i) whether the Settlement should be approved; (ii) whether the proposed plan for allocating the net proceeds of the Settlement to eligible members of the Settlement Class (the "Plan of Allocation") should be approved; (iii) Lead Counsel's Fee and Expense Application; and (iv)

---

[1] The Settlement Agreement can be viewed at www._____.com.

certain other matters.  Please read this Notice carefully.  This Notice describes important rights you may have and what steps you must take if you wish to participate in the Settlement or wish to be excluded from the Settlement Class.[2]

- If approved by the Court, the Settlement will create a $7.5 million cash fund, plus any interest earned thereon, for the benefit of eligible Settlement Class Members, less any attorneys' fees and expenses awarded by the Court, Notice and Administration Expenses, and Taxes.

- The Settlement resolves claims by Court-appointed Lead Plaintiff Steamfitters Local 449 Pension Plan which have been asserted individually and on behalf of the Settlement Class against Molina Healthcare, Inc. ("Molina" or the "Company"), J. Mario Molina, John C. Molina, Terry P. Bayer, and Rick Hopfer (collectively, "Defendants").  It avoids the costs and risks of continuing the litigation; pays money to eligible Settlement Class Members; and releases the Released Defendant Parties (defined below) from liability.

**If you are a Settlement Class Member, your legal rights
will be affected by this Settlement whether you act or do not act.
Please read this Notice carefully.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM NO LATER THAN _____, 2020** | The only way to be eligible to receive a payment from the Net Settlement Fund. |
| **EXCLUDE YOURSELF BY SUBMITTING A WRITTEN REQUEST SO THAT IT IS RECEIVED NO LATER THAN _____, 2020** | This is the only option that, assuming your claim is timely brought, might allow you to ever bring or be part of any other lawsuit against Defendants and/or the other Released Defendant Parties concerning the Released Claims.  If you exclude yourself from the Settlement Class, you will not be eligible to receive any payment from the Net Settlement Fund.  *See* Question 11 below |

---

[2] All capitalized terms not otherwise defined in this Notice have the same meanings as defined in the Settlement Agreement.

| | |
|---|---|
| | for details. |
| **OBJECT BY SUBMITTING A WRITTEN OBJECTION SO THAT IT IS RECEIVED NO LATER THAN _____, 2020** | Write to the Court about why you do not like the Settlement, the Plan of Allocation, and/or Lead Counsel's Fee and Expense Application.  If you object, you will still be a member of the Settlement Class.  *See* Question 15 below for details. |
| **GO TO A HEARING ON _____, 2020 AND FILE A NOTICE OF INTENTION TO APPEAR SO THAT IT IS RECEIVED NO LATER THAN _____, 2020** | Ask to speak in Court about the Settlement.  If you submit an objection, you may (but you do not have to) attend the hearing and, at the discretion of the Court, speak in Court about your objection.  *See* Question 19 below for details. |
| **DO NOTHING** | You will not be eligible to receive a payment from the Net Settlement Fund, you will give up rights, and you will still be bound by the Settlement. |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the Settlement.  Payments will be made if the Court approves the Settlement and after any appeals are resolved.  Please be patient.

## SUMMARY OF THE NOTICE

**Statement of the Settlement Class's Recovery**

1. Subject to Court approval, Lead Plaintiff, on behalf of the Settlement Class, has agreed to settle the Action in exchange for a payment of $7,500,000 (the "Settlement Amount") to be deposited into an Escrow Account, which may earn interest (the "Settlement Fund").  The Net Settlement Fund (as defined below) will be distributed to Settlement Class Members according to the Court-approved plan of allocation.  The proposed Plan of Allocation is set forth on pages __-__ below.

**Estimate of Average Amount of Recovery Per Share**

2. Based on Lead Plaintiff's consulting damages expert's estimate of the number of shares of Molina publicly traded common stock eligible to participate in

3

the Settlement, and assuming that all investors eligible to participate in the Settlement do so, Lead Plaintiff estimates that the average recovery, before deduction of any Court-approved fees and expenses, such as attorneys' fees, litigation expenses, Taxes, and Notice and Administration Expenses, would be approximately $0.19 per allegedly damaged share.  An allegedly damaged share might have been traded, and potentially damaged, more than once during the Class Period, and this average recovery represents the estimated average recovery for each alleged damaged share.

3.      If the Court approves the maximum amount of attorneys' fees and litigation expenses that may be requested by Lead Counsel (discussed below), the average recovery would be approximately $0.05 per allegedly damaged share. **Please note, however, that these average recovery amounts are only estimates and Settlement Class Members may recover more or less than these estimated amounts.**  An individual Settlement Class Member's actual recovery will depend on, for example: (i) the total number of claims submitted; (ii) the amount of the Net Settlement Fund; (iii) when the Settlement Class Member purchased or acquired Molina common stock during the Class Period; and (iv) whether and when the Settlement Class Member sold Molina common stock.  *See* the Plan of Allocation beginning on page ___ for information on the calculation of your Recognized Claim.

**<u>Statement of Potential Outcome of Case</u>**

4.      The Parties disagree about both liability and damages and do not agree on the damages that would be recoverable if Lead Plaintiff were to prevail on each claim asserted against Defendants.  The issues on which the Parties disagree include, among others: (i) whether Defendants made any statements or omitted any facts that were materially false or misleading, or otherwise actionable under the federal securities laws; (ii) whether any such allegedly materially false or misleading statements or omissions were made with the required level of intent or

recklessness; (iii) the amounts by which the prices of Molina common stock were allegedly artificially inflated, if at all, during the Class Period; and (iv) the extent to which factors such as general market, economic, and industry conditions influenced the trading prices of Molina common stock during the Class Period.

5.     Defendants have denied and continue to deny any wrongdoing, deny that they have committed any act or omission giving rise to any liability or violation of law, and deny that Lead Plaintiff and the Settlement Class have suffered any loss attributable to Defendants' actions.  While Lead Plaintiff believes its claims have merit, Lead Plaintiff also recognizes that there are significant obstacles to recovery.

**Statement of Attorneys' Fees and Expenses Sought**

6.     Lead Counsel, on behalf of all Plaintiffs' Counsel, will apply to the Court for an award of attorneys' fees from the Settlement Fund in an amount not to exceed 25% of the Settlement Fund, plus any accrued interest.  Lead Counsel will also apply for payment of litigation expenses incurred by Plaintiffs' Counsel in prosecuting the Action in an amount not to exceed $140,000, which may include an application pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") for the reasonable costs and expenses (including lost wages) of Lead Plaintiff directly related to its representation of the Settlement Class.  If the Court approves Lead Counsel's Fee and Expense Application in full, the average amount of fees and expenses, assuming claims are filed for all shares eligible to participate in the Settlement, will be approximately $0.05 per allegedly damaged share of Molina common stock.

**Reasons for the Settlement**

7.     For Lead Plaintiff, the principal reason for the Settlement is the guaranteed cash benefit to the Settlement Class.  This benefit must be compared to (i) the risk that the U.S. Court of Appeals for the Ninth Circuit will affirm the District Court's dismissal of the Complaint; (ii) the uncertainty and risk that Lead

Plaintiff will not be able to prove the allegations in the Complaint; (iii) the risk that the Court may grant some or all of the anticipated motions to be filed by Defendants; (iv) the uncertainty and risk inherent in the Parties' competing theories of liability and damages; and (v) other uncertainties and risks of litigation in complex actions like this, including cost and delay potentially through trial and any post-trial appeals.

8.      For Defendants, who deny all allegations of wrongdoing or liability whatsoever and deny that Settlement Class Members were damaged, the principal reasons for entering into the Settlement are to end the burden, expense, uncertainty, and risk of further litigation.

**Identification of Attorneys' Representatives**

9.      Lead Plaintiff and the Settlement Class are represented by Lead Counsel, Christine M. Fox, Esq., Labaton Sucharow LLP, 140 Broadway, New York, NY 10005, (888) 219-6877, www.labaton.com, settlementquestions@labaton.com.

10.      Further information regarding this Action, the Settlement, and this Notice may be obtained by contacting the Claims Administrator: Angeion Group, P.O. Box. _____, _____, (_____) ____-____, www._____com; or Lead Counsel.

**Please Do Not Call the Court With Questions About the Settlement**

[END OF PSLRA COVER PAGE]

**BASIC INFORMATION**

**1. Why did I get this Notice?**

11.      The Court authorized that this Notice be sent to you because you or someone in your family, or an investment account for which you serve as a custodian, may have purchased or otherwise acquired the publicly traded common stock of Molina during the period from October 31, 2014 through August 2, 2017, inclusive.  **Please Note: Receipt of this Notice does not mean that you are a**

**Member of the Settlement Class or that you will be entitled to receive a**
**payment from the Settlement.  If you wish to be eligible for a payment, you**
**are required to submit the Claim Form that is being distributed with this**
**Notice and supporting documents, as explained in the Claim Form.  *See***
**Question 8 below.**

12.   The Court directed that this Notice be sent to Settlement Class Members because they have a right to know about the proposed Settlement of this class action lawsuit, and about all of their options, including whether or not to object or exclude themselves from the Settlement Class, before the Court decides whether to approve the Settlement.  If the Court approves the Settlement, and after any objections and appeals are resolved, an administrator appointed by the Court will make the payments that the Settlement allows.

13.   This Notice explains the Action, the Settlement, Settlement Class Members' legal rights, what benefits are available, who is eligible for them, and how to get them.

14.   The Court in charge of the Action is the United States District Court for the Central District of California (the "Court" or "District Court"), and the case is known as *Steamfitters Local 449 Pension Plan v. Molina Healthcare, Inc., et al.*, Case No. 2:18-cv-03579 AB (JCx) (C.D. Cal.).  The Action is assigned to the Hon. André Birotte Jr., United States District Judge.

**2.  What is this case about?**

15.   Molina provides managed health care services under the Medicaid and Medicare programs and Patient Protection and Affordable Care Act health insurance marketplaces ("ACA Health Exchanges").  Molina's health plans are operated by various wholly owned subsidiaries, each of which is licensed as a health maintenance organization ("HMO").  The Action arises out of Defendants' allegedly false and misleading representations concerning the scalability of the Company's "administrative infrastructure" throughout the Class Period, which

Defendants claimed had the capacity to support anticipated growth for Molina in both Medicaid markets and ACA Health Exchanges.  Lead Plaintiff alleges that the market learned the "truth" regarding Molina's administrative infrastructure through a series of partial disclosures beginning on April 28, 2016 and ending on August 2, 2017, which disclosures allegedly caused drops in the price of Molina's shares.

16.    On April 27, 2018, Steamfitters filed a securities class action complaint in the Court on behalf of purchasers of Molina common stock.  The Action ultimately was assigned to the Hon. Manuel Real, United States District Judge.

17.    On June 29, 2018, Steamfitters moved pursuant to Section 21D of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for appointment as lead plaintiff and for the appointment of its counsel, Labaton Sucharow LLP, as lead counsel.

18.    On August 21, 2018, the Court issued an Order appointing Steamfitters as Lead Plaintiff and approving its selection of Labaton Sucharow LLP as Lead Counsel for the Class.

19.    Lead Plaintiff, through Lead Counsel, conducted a thorough investigation relating to the claims, defenses, and underlying events and transactions that are the subject of this Action.  This process included reviewing and analyzing: (i) documents filed publicly by the Company with the U.S. Securities and Exchange Commission ("SEC"); (ii) publicly available information, including press releases, news articles, and other public statements issued by or concerning the Company and the Defendants; (iii) research reports issued by financial analysts concerning the Company; (iv) publicly available data concerning Molina common stock; (v) certain internal, nonpublic documents provided to Lead Counsel by former employees of Molina; (vi) documents produced by Defendants in connection with the mediation; and (vii) the applicable law governing the claims

and potential defenses.  Lead Counsel also interviewed former Molina employees and other persons with relevant knowledge and consulted with experts on damages and causation issues and healthcare industry information technology (IT) systems.

20.     Steamfitters filed the operative Amended Class Action Complaint for Violation of the Federal Securities Laws (the "Complaint") on October 5, 2018. The Complaint alleges violations of Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, on behalf of a class of all persons and entities that purchased or otherwise acquired Molina publicly traded common stock during the period from October 31, 2014 through August 2, 2017, inclusive, and were damaged thereby.

21.     Defendants filed a motion to dismiss the Complaint on October 19, 2018.  Lead Plaintiff filed a memorandum of law in opposition to the motion on November 9, 2018.  Defendants filed a reply in support of the motion to dismiss on November 19, 2018.

22.     On December 13, 2018, the Court issued an Order granting Defendants' motion and dismissing the Complaint with prejudice.  The Court ruled that Lead Plaintiff failed to sufficiently plead falsity and scienter.

23.     On January 9, 2019, Lead Plaintiff appealed from the Order to the United States Court of Appeals for the Ninth Circuit (the "Court of Appeals"). Lead Plaintiff filed its opening brief and record excerpts on April 24, 2019. Defendants filed their answering brief and supplemental record excerpts on June 24, 2019.  Lead Plaintiff filed its reply brief on August 14, 2019.

24.     On June 26, 2019, during the pendency of the appeal, the Hon. Manuel Real passed away.

25.     After the appeal was fully briefed, Lead Plaintiff and Defendants agreed to engage Michelle Yoshida, Esq. of PhillipsADR, a well-respected and experienced mediator, to assist the Parties in exploring a potential negotiated

resolution of the claims asserted in this Action.  On February 27, 2020, the Parties met with Ms. Yoshida in an attempt to reach a settlement.  The mediation involved an extended effort to settle the claims and was preceded by the exchange of mediation statements and the provision of certain nonpublic documents by Molina to Lead Plaintiff.  While these discussions narrowed the differences between Lead Plaintiff and Defendants, the Parties did not reach an accord that day.

26.   On March 1, 2020, the Court of Appeals scheduled oral argument to proceed on May 13, 2020.

27.   Thereafter, on March 5, 2020, following continued arm's-length negotiations facilitated and supervised by Ms. Yoshida, the Parties reached an agreement-in-principle to settle this Action.

28.   On March 19, 2020, the Parties filed a Joint Motion to Vacate Oral Argument and Stay Appeal Pending Settlement with the Court of Appeals ("Joint Motion").  The Joint Motion advised the Court of Appeals that the Parties had reached an agreement-in-principle to settle the Action, and asked the Court of Appeals to stay the appeal and vacate the May 13, 2020 oral argument date to allow the Parties time to negotiate the formal settlement documents.

29.   On March 26, 2020, the Court of Appeals granted the Joint Motion. The Court of Appeals stayed the appeal until September 18, 2020 or until such time as the district court grants final approval to the Settlement, whichever comes first.

30.   On April 21, 2020, the Parties filed a Joint Motion for Limited Remand Pending Consideration of Proposed Class Action Settlement with the Court of Appeals.  On April 22, 2020, the Court of Appeals granted the motion and remanded the matter to the District Court for the limited purpose of allowing the District Court to consider the Settlement and related matters.  On April 24, 2020, the District Court reassigned this Action to the Hon. André Birotte Jr., United States District Judge.

31.     As of May 5, 2020, the Parties executed the Settlement Agreement, which sets forth the final terms and conditions of the Settlement.

**3.  Why is this a class action?**

32.     In a class action, one or more persons or entities (in this case, Lead Plaintiff), sue on behalf of people and entities that have similar claims.  Together, these people and entities are a "class," and each is a "class member."  Bringing a case, such as this one, as a class action allows the adjudication of many individuals' similar claims that might be too small to bring economically as separate actions.  One court resolves the issues for all class members at the same time, except for those who exclude themselves, or "opt-out," from the class.  In this Action, the Court has appointed Steamfitters Local 449 Pension Plan to serve as Lead Plaintiff and has appointed Labaton Sucharow LLP to serve as Lead Counsel and Glancy, Prongay & Murray LLP to serve as Liaison Counsel.

**4.  What are the reasons for the Settlement?**

33.     The Court did not finally decide in favor of Lead Plaintiff or Defendants.  Instead, both sides agreed to a settlement.

34.     Lead Plaintiff and Lead Counsel believe that the claims asserted in the Action have merit despite the District Court's dismissal of the Complaint.  Lead Plaintiff and Lead Counsel recognize, however, that the Court of Appeals may not reverse the District Court's dismissal, and that there is risk, cost, and delay in continuing to pursue the claims in this Action through trial and any appeals.  Defendants have raised a number of arguments and defenses (which they would raise at summary judgment and trial) that they did not make false and misleading statements in violation of the Exchange Act, and that Lead Plaintiff would not be able to establish that Defendants acted with the requisite intent.  Even assuming Lead Plaintiff could establish liability, the amount of damages that could be attributed to the allegedly false and misleading statements would also be hotly contested.  In the absence of a settlement, the Parties would present factual and

expert testimony on each of these issues, and there is a risk that the Court or jury would resolve these issues unfavorably against Lead Plaintiff and the Settlement Class. In light of the Settlement and the guaranteed cash recovery to the Settlement Class, Lead Plaintiff and Lead Counsel believe that the proposed Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class.

35.     Defendants have denied and continue to deny any wrongdoing and deny that they have committed any act or omission giving rise to any liability or violation of law. Defendants deny the allegations that they knowingly, or otherwise, made any material misstatements or omissions; that any Member of the Settlement Class has suffered damages; that the prices of Molina common stock were artificially inflated by reason of the alleged misrepresentations, omissions, or otherwise; or that the conduct alleged in the Complaint caused any losses allegedly experienced by, or otherwise harmed, any Member of the Settlement Class. Nonetheless, Defendants have concluded that continuation of the Action would be protracted, time-consuming, and expensive, and that it is desirable that the Action be fully and finally settled in the manner and upon the terms and conditions set forth in the Settlement Agreement. Defendants also have taken into account the uncertainty and risks inherent in any litigation, especially a complex case like this Action, and believe that it is desirable and beneficial that the Action be settled in the manner and upon the terms and conditions set forth in the Settlement Agreement.

**WHO IS IN THE SETTLEMENT**

**5.  How do I know if I am part of the Settlement Class?**

36.     To be eligible for a payment from the proceeds of the Settlement, you must be a Settlement Class Member. The Court has directed, for the purposes of the proposed Settlement, that everyone who fits the following description is a Settlement Class Member and subject to the Settlement unless they are an excluded

person (*see* Question 6 below) or take steps to exclude themselves from the Settlement Class (*see* Question 11 below):

> **All persons and entities that purchased or otherwise acquired Molina publicly traded common stock during the period from October 31, 2014 through August 2, 2017, inclusive, and were damaged thereby.**

37.     Receipt of this Notice does not mean you are a member of the Settlement Class.  The Parties do not have access to your transactions in Molina publicly traded common stock.  If one of your mutual funds purchased Molina common stock during the Class Period, that alone does not make you a Settlement Class Member.  You are a Settlement Class Member only if you individually purchased or otherwise acquired Molina publicly traded common stock during the Class Period.  Check your investment records or contact your broker to see if you have any eligible purchases or acquisitions.

**6. Are there exceptions to being included?**

38.     Yes.  There are some individuals and entities who are excluded from the Settlement Class by definition.  Excluded from the Settlement Class are: (i) the Defendants; (ii) the present and former officers and directors of the Company; (iii) the Company's subsidiaries and affiliates; (iv) the Company's employee retirement and benefit plan(s) and their participants or beneficiaries, to the extent they made purchases through such plan(s); (v) members of the immediate families of the Individual Defendants; (vi) any entity in which any Defendant has or had a controlling interest; and (vii) the legal representatives, heirs, successors, and assigns of any such excluded party.  Also excluded from the Settlement Class will be any Person that timely and validly seeks exclusion from the Settlement Class in accordance with the procedures described in Question 11 below.

**THE SETTLEMENT BENEFITS — WHAT YOU GET**

**7. What does the Settlement provide?**

39.     In exchange for the Settlement and the release of the Released Claims

against the Released Defendant Parties (*see* Question 10 below), Defendants have agreed to cause a $7.5 million payment to be made, which, along with any interest earned on this amount, will be distributed, after the deduction of Court-awarded attorneys' fees and litigation expenses, Notice and Administration Expenses, Taxes, and any other fees or expenses approved by the Court (the "Net Settlement Fund"), among all Settlement Class Members who submit valid Claim Forms and are found to be eligible to receive a distribution from the Net Settlement Fund ("Authorized Claimants").

**8.  How can I receive a payment?**

40.     To qualify for a payment from the Net Settlement Fund, you must submit a timely and valid Claim Form.  A Claim Form is included with this Notice. If you did not receive a Claim Form, you can obtain one from the website dedicated to the Settlement: www._____.com, or from Lead Counsel's website: www.labaton.com.  You can also request that a Claim Form be mailed to you by calling the Claims Administrator toll-free at (____) ___-_____.

41.     Please read the instructions contained in the Claim Form carefully, fill it out, include all the documents the form requests, sign it, and mail it to the Claims Administrator or submit it using the Settlement website so that it is **postmarked or submitted no later than _____, 2020.**

**9.  When will I receive my payment?**

42.     The Court will hold a Settlement Hearing on **_____ _____, 2020** to decide, among other things, whether to finally approve the Settlement.  Even if the Court approves the Settlement, there may be appeals which can take time to resolve, perhaps more than a year.  It also takes a long time for all of the Claim Forms to be accurately reviewed and processed.  Please be patient.

**10.  What am I giving up to receive a payment or stay in the Settlement Class?**

43.     If you are a Settlement Class Member and do not timely and validly exclude yourself from the Settlement Class, you will remain in the Settlement

14

Class and that means that, upon the "Effective Date" of the Settlement, you will release all "Released Claims" against the "Released Defendant Parties."

(a) "**Released Claims**" means any and all claims and causes of action of every nature and description, including both known claims and Unknown Claims (defined below), whether arising under federal, state, common or foreign law, or any other law, whether class or individual in nature, that Lead Plaintiff or any other Settlement Class Member (i) asserted in the Action; or (ii) could have asserted in the Action, or in any forum, that arise out of, relate to, or are based upon both (a) the allegations, transactions, facts, events, acts, occurrences, statements, representations and/or omissions alleged in the Action and (b) the purchase or acquisition of Molina publicly traded common stock during the Class Period. For the avoidance of doubt, Released Claims do not include claims relating to the enforcement of the Settlement.

(b) "**Released Defendant Parties**" means Defendants, Defendants' Counsel, and each of their respective past or present subsidiaries, parents, affiliates, principals, successors and predecessors, assigns, officers, directors, shareholders, trustees, partners, agents, fiduciaries, contractors, employees, attorneys, auditors, and insurers; the spouses, members of the immediate families, representatives, and heirs of the Individual Defendants, as well as any trust of which any Individual Defendant is the settlor or which is for the benefit of any of their immediate family members; any firm, trust, corporation, or entity in which any Defendant has a controlling interest; and any of the legal representatives, heirs, successors in interest or assigns of Defendants.

(c) "**Unknown Claims**" means any and all Released Claims that Lead Plaintiff or any other Settlement Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Defendant Parties, and any and all Released Defendants' Claims that any Defendant does not know or suspect to exist in his, her, or its favor at the time of the release of the

Released Plaintiff Parties, which if known by him, her, or it might have affected his, her, or its decision(s) with respect to the Settlement, including the decision to object to the terms of the Settlement or to exclude himself, herself, or itself from the Settlement Class.  With respect to any and all Released Claims and Released Defendants' Claims, the Parties stipulate and agree that, upon the Effective Date, Lead Plaintiff and Defendants shall expressly, and each other Settlement Class Member shall be deemed to have, and by operation of the Judgment or Alternative Judgment shall have, to the fullest extent permitted by law, expressly waived and relinquished any and all provisions, rights and benefits conferred by any law of any state or territory of the United States or foreign law, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Lead Plaintiff, other Settlement Class Members, or Defendants may hereafter discover facts, legal theories, or authorities in addition to or different from those which any of them now knows or believes to be true with respect to the subject matter of the Released Claims and the Released Defendants' Claims, but Lead Plaintiff and Defendants shall expressly, fully, finally, and forever settle and release, and each Settlement Class Member shall be deemed to have settled and released, and upon the Effective Date and by operation of the Judgment or Alternative Judgment shall have settled and released, fully, finally, and forever, any and all Released Claims and Released Defendants' Claims as applicable, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities.  Lead Plaintiff and Defendants acknowledge, and other Settlement Class Members by operation of law shall be

deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims and Released Defendants' Claims was separately bargained for and was a material element of the Settlement.

44.     The "Effective Date" will occur when an Order entered by the Court approving the Settlement becomes Final and is not subject to appeal.  If you remain a member of the Settlement Class, all of the Court's orders, whether favorable or unfavorable, will apply to you and legally bind you.

45.     Upon the "Effective Date," Defendants will also provide a release of any claims against Lead Plaintiff and the Settlement Class arising out of or related to the institution, prosecution, or settlement of the claims in the Action.

## EXCLUDING YOURSELF FROM THE SETTLEMENT CLASS

46.     If you do not want to be eligible to receive a payment from the Settlement and you do not want to release the Released Claims against the Released Defendant Parties, then you must take steps to remove yourself from the Settlement Class.  This is called excluding yourself or "opting out."  **Please note: if you bring your own claims, Defendants will have the right to seek their dismissal.  Also, Defendants may terminate the Settlement if Settlement Class Members who purchased in excess of a certain amount of shares of Molina common stock seek exclusion from the Settlement Class.**

**11.  How do I exclude myself from the Settlement Class?**

47.     To exclude yourself from the Settlement Class, you must mail a signed letter stating that you "request to be excluded from the Settlement Class in *Steamfitters Local 449 Pension Plan v. Molina Healthcare, Inc., et al.*, Case No. 2:18-cv-03579 AB (JCx) (C.D. Cal.)."  You cannot exclude yourself by telephone or e-mail.  Each request for exclusion must also state: (i) the name, address, and telephone number of the person or entity requesting exclusion; (ii) the number of shares of Molina publicly traded common stock purchased, acquired, and sold during the Class Period, as well as the date, number of shares and price per share

17

of each such purchase, acquisition, and sale; and (iii) be signed by the person or entity requesting exclusion or an authorized representative.  A request for exclusion must be mailed so that it is **received no later than _____, 2020,** at this address:

*Molina Healthcare Securities Litigation*
c/o Angeion Group
P.O. Box _____
_____

**Your exclusion request must comply with these requirements in order to be valid.**

48.     If you ask to be excluded, do not submit a Claim Form because you cannot receive any payment from the Net Settlement Fund.  Also, you cannot object to the Settlement because you will not be a Settlement Class Member.  However, if you submit a valid exclusion request, you will not be legally bound by anything that happens in the Action, and you may be able to sue (or continue to sue) Defendants and the other Released Defendant Parties in the future.  If you have a pending lawsuit against any of the Released Defendant Parties, **please speak to your lawyer in the case immediately.**

**12.  If I exclude myself, can I get money from the proposed Settlement?**

49.     No.  If you exclude yourself, you are no longer a Settlement Class Member, so do not send in a Claim Form to ask for any money.

### THE LAWYERS REPRESENTING YOU

**13.  Do I have a lawyer in this case?**

50.     The Court appointed the law firm of Labaton Sucharow LLP to represent all Settlement Class Members.  These lawyers are called "Lead Counsel."  You will not be separately charged for these lawyers.  The Court will determine the amount of Plaintiffs' Counsel's fees and expenses, which will be paid from the Settlement Fund.  If you want to be represented by your own lawyer, you may hire one at your own expense.

**14.  How will the lawyers be paid?**

51.     Plaintiffs' Counsel have not received any payment for their work in pursuing the claims against Defendants on behalf of the Settlement Class, nor have they been paid for their litigation expenses.  Lead Counsel will ask the Court to award Plaintiffs' Counsel attorneys' fees of no more than 25% of the Settlement Fund, or $1,875,000, plus any accrued interest.  Plaintiffs' Counsel are Labaton Sucharow LLP and Glancy, Prongay & Murray LLP.  No other attorneys will share in the fee awarded by the Court.  Lead Counsel will also seek payment of litigation expenses incurred by Plaintiffs' Counsel in the prosecution of the Action of no more than $140,000, which may include an application for Lead Plaintiff's reasonable costs and expenses (including lost wages) directly related to its representation of the Settlement Class.

52.     As explained above, any attorneys' fees and expenses awarded by the Court will be paid from the Settlement Fund.  Settlement Class Members are not personally liable for any such fees or expenses.

**OBJECTING TO THE SETTLEMENT, THE PLAN OF ALLOCATION, OR THE FEE AND EXPENSE APPLICATION**

**15.  How do I tell the Court that I do not like something about the proposed Settlement?**

53.     If you are a Settlement Class Member, you can object to the Settlement or any of its terms, the proposed Plan of Allocation, and/or Lead Counsel's Fee and Expense Application.  You may give reasons why you think the Court should not approve any or all of the Settlement terms or related relief.  If you would like the Court to consider your views, you must file a proper objection within the deadline, and according to the following procedures.

54.     To object, you must send a signed letter stating that you object to the proposed Settlement in "*Steamfitters Local 449 Pension Plan v. Molina Healthcare, Inc., et al.*, Case No. 2:18-cv-03579 AB (JCx) (C.D. Cal.)."  Your

objection must state why you are objecting and whether your objection applies only to you, a subset of the Settlement Class, or the entire Settlement Class.  The objection must also: (i) include the name, address, and telephone number of the person or entity objecting; (ii) contain a statement of the objection and the specific reasons for it, including any legal and evidentiary support (including witnesses) the Settlement Class Member wishes to bring to the Court's attention; and (iii) identifying the number of shares of Molina publicly traded common stock the person or entity purchased, acquired, and sold during the Class Period, as well as the dates and prices of each such purchase, acquisition and sale.  Unless otherwise ordered by the Court, any Settlement Class Member who does not object in the manner described in this Notice will be deemed to have waived any objection and will be forever foreclosed from making any objection to the proposed Settlement, the Plan of Allocation, and/or Lead Counsel's Fee and Expense Application.  Your objection must be filed with the Court at the address below, either by mail or in person, **no later than _____, 2020 and** be mailed or delivered to each of the following counsel so that it is **received no later than _____, 2020:**

| **Court** | **Lead Counsel** | **Defendants' Counsel** |
|---|---|---|
| Clerk of the Court United States District Court Central District of California First Street U.S. Courthouse 350 West First Street, Suite 4311 Los Angeles, CA 90012-4565 | Labaton Sucharow LLP Christine M. Fox, Esq. 140 Broadway New York, NY 10005 | Latham & Watkins LLP Robert W. Perrin, Esq. 355 South Grand Ave., Suite 100 Los Angeles, CA 90071-1560 |

55.     You do not need to attend the Settlement Hearing to have your written objection considered by the Court.  However, any Settlement Class Member who has not submitted a request for exclusion and who has complied with the procedures described in this Question 15 and below in Question 19 may appear at the Settlement Hearing and be heard, to the extent allowed by the Court, about their objection.  An objector may appear in person or arrange, at his, her, or its own expense, for a lawyer to represent him, her, or it at the Settlement Hearing.

**16.  What is the difference between objecting and seeking exclusion?**

56.     Objecting is telling the Court that you do not like something about the proposed Settlement, Plan of Allocation, or Lead Counsel's Fee and Expense Application.  You can still recover money from the Settlement.  You can object *only* if you stay in the Settlement Class.  Excluding yourself is telling the Court that you do not want to be part of the Settlement Class.  If you exclude yourself from the Settlement Class, you have no basis to object because the Settlement and the Action no longer affect you.

<b>THE SETTLEMENT HEARING</b>

**17.  When and where will the Court decide whether to approve the proposed Settlement?**

57.     The Court will hold the Settlement Hearing on _____, 2020 at ___:___ ___.m., in Courtroom 7B at the United States District Court for the Central District of California, First Street U.S. Courthouse, 350 West First Street, Los Angeles, CA 90012.

58.     At this hearing, the Court will consider, among other things, whether: (i) the Settlement is fair, reasonable, adequate, and should be finally approved; (ii) the Plan of Allocation is fair and reasonable, and should be approved; and (iii) the application of Lead Counsel for an award of attorneys' fees and payment of litigation expenses, including those of Lead Plaintiff, is reasonable and should be approved.  The Court will take into consideration any written objections filed in accordance with the instructions in Question 15 above.  We do not know how long it will take the Court to make these decisions.

59.     You should be aware that the Court may change the date and time of the Settlement Hearing, or hold the hearing telephonically, without another notice being sent to Settlement Class Members.  If you want to attend the hearing, you should check with Lead Counsel beforehand to be sure that the date and/or time has not changed, or periodically check the Settlement website at

www._____.com to see if the Settlement Hearing stays as scheduled or is changed.  Subscribers to PACER, a fee-based service, can also view the Court's docket for the Action for updates about the Settlement Hearing through the Court's on-line Case Management/Electronic Case Files System at https://www.pacer.gov.

**18.  Do I have to come to the Settlement Hearing?**

60.     No.  Lead Counsel will answer any questions the Court may have.  But, you are welcome to attend at your own expense.  If you submit a valid and timely objection, the Court will consider it and you do not have to come to Court to discuss it.  You may have your own lawyer attend (at your own expense), but it is not required.  If you do hire your own lawyer, he or she must file and serve a Notice of Appearance in the manner described in the answer to Question 19 below **no later than _____, 2020**.

**19.  May I speak at the Settlement Hearing?**

61.     You may ask the Court for permission to speak at the Settlement Hearing.  To do so, you must include with your objection (*see* Question 15), **no later than _____, 2020,** a statement that you, or your attorney, intend to appear in "*Steamfitters Local 449 Pension Plan v. Molina Healthcare, Inc., et al.*, Case No. 2:18-cv-03579 AB (JCx) (C.D. Cal.)."  Persons who intend to present evidence at the Settlement Hearing must also include in their objections (prepared and submitted in accordance with the answer to Question 15 above) the identities of any witnesses they may wish to call to testify and any exhibits they intend to introduce into evidence at the Settlement Hearing.  You may not speak at the Settlement Hearing if you exclude yourself or if you have not provided written notice in accordance with the procedures described in this Question 19 and Question 15 above.

<b>IF YOU DO NOTHING</b>

**20.  What happens if I do nothing at all?**

62.     If you do nothing and you are a member of the Settlement Class, you

will receive no money from this Settlement and you will be precluded from starting a lawsuit, continuing with a lawsuit, or being part of any other lawsuit against Defendants and the other Released Defendant Parties concerning the Released Claims.  To share in the Net Settlement Fund, you must submit a Claim Form (*see* Question 8 above).

**GETTING MORE INFORMATION**

**21.  Are there more details about the Settlement?**

63.    This Notice summarizes the proposed Settlement.  More details are contained in the Settlement Agreement.  You may review the Settlement Agreement filed with the Court and other documents in the case during business hours at the Clerk of the Court, United States District Court for the Central District of California, First Street U.S. Courthouse, 350 West First Street, Suite 4311, Los Angeles, CA 90012.  Subscribers to PACER can also view the papers filed publicly in the Action through the Court's on-line Case Management/Electronic Case Files System at https://www.pacer.gov.

64.    You can also get a copy of the Settlement Agreement, and other documents related to the Settlement, as well as additional information about the case and Settlement by visiting the website dedicated to the Settlement, www._____.com, where you will find answers to common questions about the Settlement and can download copies of the Settlement Agreement or Claim Form.  You may also call the Claims Administrator toll free at (_____) _____- _____ or write to the Claims Administrator at *Molina Healthcare Securities Litigation*, c/o Angeion Group, P.O. Box _____, _____."  **Please do not call the Court with questions about the Settlement.**

**PLAN OF ALLOCATION OF THE NET SETTLEMENT FUND**

**22.  How will my claim be calculated?**

65.    The Plan of Allocation set forth below is the plan that is being

proposed by Lead Plaintiff to the Court for approval.  The Court may approve this Plan of Allocation or modify it without additional notice to the Settlement Class. Any order modifying the Plan of Allocation will be posted on the Settlement website at: www._____.com and at www.labaton.com.

66.     As discussed above, the Settlement Amount and any interest it earns constitute the Settlement Fund.  The Settlement Fund, after the deduction of Court-approved attorneys' fees and litigation expenses, Notice and Administration Expenses, Taxes, and any other fees or expenses approved by the Court, is the Net Settlement Fund.  If the Settlement is approved by the Court, the Net Settlement Fund will be distributed to eligible Authorized Claimants – *i.e.*, members of the Settlement Class who timely submit valid Claim Forms that are accepted for payment – in accordance with this proposed Plan of Allocation or such other plan of allocation as the Court may approve.

67.     To design the Plan, Lead Counsel conferred with Lead Plaintiff's consulting damages expert.  The objective of the Plan of Allocation is to distribute the Net Settlement Fund equitably among those Settlement Class Members who suffered economic losses as a proximate result of the alleged wrongdoing.  The Plan of Allocation is not intended to estimate, or be indicative of, the amounts that Settlement Class Members might have been able to recover after a trial.  Because the Net Settlement Fund is less than the total losses alleged to be suffered by Settlement Class Members, the formulas described below for calculating Recognized Losses are not intended to estimate the amounts that will actually be paid to Authorized Claimants.  The Plan of Allocation measures the amount of loss that a Settlement Class Member can claim for purposes of making *pro rata* allocations of the Net Settlement Fund to Authorized Claimants.

68.     For losses to be compensable damages under the federal securities laws, the disclosure of the allegedly misrepresented information must be the cause of the change in the price of the securities at issue.  In this case, Lead Plaintiff

alleged that Defendants issued false statements and omitted material facts during the Class Period (October 31, 2014 through August 2, 2017, inclusive) that artificially inflated the price of Molina publicly traded common stock.  It is alleged that corrective information released after the market closed on April 28, 2016, February 15, 2017, and August 2, 2017, impacted the prices of Molina common stock in a statistically significant manner and removed the alleged artificial inflation from the share price on April 29, 2016, February 16, 2017, and August 3, 2017.  Accordingly, in order to have a compensable loss in this Settlement, Molina common stock must have been purchased or otherwise acquired during the Class Period and held through at least one of the alleged corrective disclosures listed above.

69.     An individual Settlement Class Member's recovery will depend on, for example: (a) the total number and value of claims submitted; (b) when the claimant purchased or acquired Molina common stock; and (c) whether and when the claimant sold his, her, or its shares of Molina common stock.

**CALCULATION OF RECOGNIZED LOSS AMOUNTS
FOR MOLINA PUBLICLY TRADED COMMON STOCK**

70.     A "Recognized Loss Amount" will be calculated as set forth below for each share of Molina publicly traded common stock purchased or otherwise acquired during the Class Period that is listed in the Claim Form and for which adequate documentation is provided.  To the extent that the calculation of a claimant's Recognized Loss Amount results in a negative number (*i.e.*, a gain), that number shall be set to zero.

71.     A claimant's "Recognized Claim" under the Plan of Allocation shall be the sum of his, her or its Recognized Loss Amounts as calculated under the Plan.  For purposes of determining whether a claimant has a "Recognized Claim," purchases, acquisitions, and sales of Molina common stock will first be matched on a First In/First Out ("FIFO") basis.  If a Settlement Class Member has more

than one purchase/acquisition or sale of Molina common stock during the Class Period, all purchases/acquisitions and sales shall be matched on a FIFO basis. Class Period sales will be matched first against any holdings at the beginning of the Class Period and then against purchases/acquisitions in chronological order, beginning with the earliest purchase/acquisition made during the Class Period.

72.    For each share of Molina common stock purchased or otherwise acquired during the Class Period and sold before the close of trading on October 31, 2017, an "Out of Pocket Loss" will be calculated.  Out of Pocket Loss is defined as the purchase price (excluding all fees, taxes, and commissions) minus the sale price (excluding all fees, taxes, and commissions).  To the extent that the calculation of the Out of Pocket Loss results in a negative number, that number shall be set to zero.

**For each share of Molina common stock purchased or acquired from October 31, 2014 through and including August 2, 2017, and:**

A. Sold before the opening of trading on April 29, 2016, the Recognized Loss Amount for each such share shall be zero.

B. Sold after the opening of trading on April 29, 2016 and before the close of trading on August 2, 2017, the Recognized Loss Amount for each such share shall be ***the lesser of***:

   1. the dollar artificial inflation applicable to each such share on the date of purchase/acquisition as set forth in **Table 1** below ***minus*** the dollar artificial inflation applicable to each such share on the date of sale as set forth in **Table 1** below; or

   2. the Out of Pocket Loss.

C. Sold after the close of trading on August 2, 2017 and before the close of trading on October 31, 2017, the Recognized Loss Amount for each such share shall be ***the least of***:

   1. the dollar artificial inflation applicable to each such share on the date of purchase/acquisition as set forth in **Table 1** below; or

   2. the actual purchase/acquisition price of each such share ***minus*** the average closing price from August 3, 2017, up to the date of sale as set forth in **Table 2** below; or

   3. the Out of Pocket Loss.

D. Held as of the close of trading on October 31, 2017, the Recognized Loss Amount for each such share shall be ***the lesser***

26

*of*:

1. the dollar artificial inflation applicable to each such share on the date of purchase/acquisition as set forth in **Table 1** below; or

2. the actual purchase/acquisition price of each such share *minus* $63.57.[3]

## TABLE 1

### Molina Common Stock Artificial Inflation
### for Purposes of Calculating Purchase and Sale Inflation

| Transaction Date | Artificial Inflation Per Share |
| --- | --- |
| October 31, 2014 – April 28, 2016 | $26.45 |
| April 29, 2016 – February 15, 2017 | $14.92 |
| February 16, 2017 – August 2, 2017 | $4.50 |

## TABLE 2

### Molina Common Stock Closing Price and Average Closing Price
### August 3, 2017 – October 31, 2017

| Date | Closing Price | Average Closing Price between August 3, 2017 and Date Shown | | Date | Closing Price | Average Closing Price between August 3, 2017 and Date Shown |
| --- | --- | --- | --- | --- | --- | --- |
| 08/03/2017 | $62.32 | $62.32 | | 09/19/2017 | $62.12 | $61.96 |
| 08/04/2017 | $59.80 | $61.06 | | 09/20/2017 | $62.58 | $61.97 |
| 08/07/2017 | $58.59 | $60.24 | | 09/21/2017 | $62.51 | $61.99 |
| 08/08/2017 | $58.60 | $59.83 | | 09/22/2017 | $65.32 | $62.08 |
| 08/09/2017 | $58.27 | $59.52 | | 09/25/2017 | $64.54 | $62.15 |
| 08/10/2017 | $57.53 | $59.19 | | 09/26/2017 | $65.59 | $62.24 |
| 08/11/2017 | $58.05 | $59.02 | | 09/27/2017 | $66.54 | $62.35 |
| 08/14/2017 | $57.56 | $58.84 | | 09/28/2017 | $67.59 | $62.48 |
| 08/15/2017 | $57.03 | $58.64 | | 09/29/2017 | $68.76 | $62.63 |
| 08/16/2017 | $56.78 | $58.45 | | 10/02/2017 | $68.51 | $62.77 |
| 08/17/2017 | $59.51 | $58.55 | | 10/03/2017 | $67.40 | $62.88 |

---

[3] Pursuant to Section 21D(e)(1) of the Exchange Act, "in any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market." Consistent with the requirements of the Exchange Act, Recognized Loss Amounts are reduced to an appropriate extent by taking into account the closing prices of Molina common stock during the "90-day look-back period," August 3, 2017 through October 31, 2017. The mean (average) closing price for Molina common stock during this 90-day look-back period was $63.57.

| Date | Closing Price | Average Closing Price between August 3, 2017 and Date Shown | Date | Closing Price | Average Closing Price between August 3, 2017 and Date Shown |
|---|---|---|---|---|---|
| 08/18/2017 | $59.63 | $58.64 | 10/04/2017 | $67.02 | $62.97 |
| 08/21/2017 | $59.98 | $58.74 | 10/05/2017 | $67.37 | $63.07 |
| 08/22/2017 | $60.54 | $58.87 | 10/06/2017 | $67.86 | $63.18 |
| 08/23/2017 | $60.51 | $58.98 | 10/09/2017 | $66.66 | $63.25 |
| 08/24/2017 | $61.30 | $59.13 | 10/10/2017 | $65.16 | $63.29 |
| 08/25/2017 | $62.03 | $59.30 | 10/11/2017 | $63.58 | $63.30 |
| 08/28/2017 | $63.18 | $59.51 | 10/12/2017 | $63.42 | $63.30 |
| 08/29/2017 | $63.50 | $59.72 | 10/13/2017 | $61.28 | $63.26 |
| 08/30/2017 | $62.91 | $59.88 | 10/16/2017 | $59.86 | $63.19 |
| 08/31/2017 | $64.00 | $60.08 | 10/17/2017 | $61.54 | $63.16 |
| 09/01/2017 | $64.25 | $60.27 | 10/18/2017 | $63.09 | $63.16 |
| 09/05/2017 | $65.42 | $60.49 | 10/19/2017 | $63.64 | $63.17 |
| 09/06/2017 | $64.65 | $60.66 | 10/20/2017 | $64.40 | $63.19 |
| 09/07/2017 | $64.97 | $60.84 | 10/23/2017 | $66.25 | $63.25 |
| 09/08/2017 | $65.04 | $61.00 | 10/24/2017 | $66.24 | $63.30 |
| 09/11/2017 | $65.88 | $61.18 | 10/25/2017 | $66.63 | $63.35 |
| 09/12/2017 | $65.74 | $61.34 | 10/26/2017 | $65.53 | $63.39 |
| 09/13/2017 | $66.07 | $61.50 | 10/27/2017 | $67.14 | $63.45 |
| 09/14/2017 | $66.14 | $61.66 | 10/30/2017 | $66.66 | $63.50 |
| 09/15/2017 | $66.62 | $61.82 | 10/31/2017 | $67.83 | $63.57 |
| 09/18/2017 | $66.00 | $61.95 | | | |

## ADDITIONAL PROVISIONS

73.     Molina publicly traded common stock is the only security eligible for recovery under the Plan of Allocation.  With respect to Molina common stock purchased or sold through the exercise of an option, the purchase/sale date of the Molina common stock is the exercise date of the option and the purchase/sale price is the exercise price of the option.

74.     Purchases or acquisitions and sales of Molina common stock shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" or "sale" date.  The receipt or grant by gift, inheritance or operation of law of Molina common stock during the Class Period shall not be deemed a purchase, acquisition, or sale of such shares of Molina common stock for the calculation of a claimant's Recognized Claim, nor shall the receipt or grant be deemed an assignment of any claim relating to the purchase/acquisition of such shares of such Molina common stock unless (i) the donor or decedent purchased or

otherwise acquired such shares of Molina common stock during the Class Period; (ii) no Claim Form was submitted by or on behalf of the donor, on behalf of the decedent, or by anyone else with respect to such shares of Molina common stock; and (iii) it is specifically so provided in the instrument of gift or assignment.

75.     In accordance with the Plan of Allocation, the Recognized Loss Amount on any portion of a purchase or acquisition that matches against (or "covers") a "short sale" is zero.  The Recognized Loss Amount on a "short sale" that is not covered by a purchase or acquisition is also zero.

76.     In the event that a claimant has an opening short position in Molina common stock at the start of the Class Period, the earliest Class Period purchases or acquisitions shall be matched against such opening short position in accordance with the FIFO matching described above and any portion of such purchases or acquisition that covers such short sales will not be entitled to recovery.  In the event that a claimant newly establishes a short position during the Class Period, the earliest subsequent Class Period purchase or acquisition shall be matched against such short position on a FIFO basis and will not be entitled to a recovery.

77.     An Authorized Claimant's Recognized Claim shall be the amount used to calculate the Authorized Claimant's *pro rata* share of the Net Settlement Fund.  If the sum total of Recognized Claims of all Authorized Claimants who are entitled to receive payment out of the Net Settlement Fund is greater than the Net Settlement Fund, each Authorized Claimant shall receive his, her, or its *pro rata* share of the Net Settlement Fund.  The *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. If the Net Settlement Fund exceeds the sum total amount of the Recognized Claims of all Authorized Claimants entitled to receive payment out of the Net Settlement Fund, the excess amount in the Net Settlement Fund shall be distributed *pro rata* to all Authorized Claimants entitled to receive payment.

78.     The Net Settlement Fund will be allocated among all Authorized Claimants whose prorated payment is $10.00 or greater.  If the prorated payment to any Authorized Claimant calculates to less than $10.00, it will not be included in the calculation and a distribution will not be made to that Authorized Claimant.

79.     Distributions will be made to Authorized Claimants after all claims have been processed and after the Court has finally approved the Settlement.  If there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise) after at least six (6) months from the date of initial distribution of the Net Settlement Fund, the Claims Administrator shall, if feasible and economical after payment of Notice and Administration Expenses, Taxes, and Attorneys' Fees and Expenses, if any, redistribute such balance among Authorized Claimants who have cashed their initial checks in an equitable and economic fashion.  Once it is no longer feasible or economical to make further distributions, any balance that still remains in the Net Settlement Fund after such re-distribution(s) and after payment of outstanding Notice and Administration Expenses, Taxes, and Attorneys' Fees and Expenses, if any, shall be contributed to a non-sectarian, not-for-profit charitable organization serving the public interest designated by Lead Plaintiff and approved by the Court.

80.     Payment pursuant to the Plan of Allocation, or such other plan as may be approved by the Court, shall be conclusive against all claimants.  No person shall have any claim against Lead Plaintiff, Lead Counsel, their consulting damages expert, the Claims Administrator, or other agent designated by Lead Counsel, arising from determinations or distributions to claimants made substantially in accordance with the Settlement Agreement, the Plan of Allocation approved by the Court, or further orders of the Court.  Lead Plaintiff, Defendants and their respective counsel, and all other Released Parties shall have no responsibility for or liability whatsoever for the investment or distribution of the Settlement Fund, the Net Settlement Fund, the Plan of Allocation or the

determination, administration, calculation, or payment of any Claim Form or non-performance of the Claims Administrator, the payment or withholding of Taxes owed by the Settlement Fund or any losses incurred in connection therewith.

**SPECIAL NOTICE TO SECURITIES BROKERS AND NOMINEES**

81.    If you purchased or otherwise acquired publicly traded Molina common stock (ISIN: US60855R1005) during the Class Period for the beneficial interest of a person or entity other than yourself, the Court has directed that **WITHIN SEVEN (7) CALENDAR DAYS OF YOUR RECEIPT OF THIS NOTICE**, **YOU MUST EITHER**: (a) provide to the Claims Administrator the name and last known address of each person or entity for whom or which you purchased or otherwise acquired publicly traded Molina common stock during the Class Period; or (b) request additional copies of this Notice and the Claim Form from the Claims Administrator, which will be provided to you free of charge, and **WITHIN SEVEN (7) CALENDAR DAYS** of receipt, mail the Notice and Claim Form directly to all the beneficial owners of those securities.  If they are available, you must also provide the Claims Administrator with the e-mail addresses of the beneficial owners.  If you choose to follow procedure (b), the Court has also directed that, upon making that mailing, **YOU MUST SEND A STATEMENT** to the Claims Administrator confirming that the mailing was made as directed and keep a record of the names and mailing addresses used.  Upon full and timely compliance with these directions, you may seek reimbursement from the Settlement Fund of your reasonable expenses actually incurred in connection with the foregoing, upon request and submission of appropriate documentation.  All communications concerning the foregoing should be addressed to the Claims Administrator:

*Molina Healthcare Securities Litigation*
c/o Angeion Group
P.O. Box _____

_____

1

Dated: _____, 2020      BY ORDER OF THE UNITED STATES

2

DISTRICT COURT FOR THE
CENTRAL DISTRICT OF
CALIFORNIA

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28