Jonathan Gardner (*pro hac vice*)
Christine M. Fox (*pro hac vice*)
David J. Goldsmith
Theodore J. Hawkins (*pro hac vice*)
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
(212) 907-0700
(212) 818-0477 (fax)
jgardner@labaton.com
dgoldsmith@labaton.com
cfox@labaton.com
thawkins@labaton.com

*Lead Counsel for Lead Plaintiff
Steamfitters Local 449 Pension Plan
and the Settlement Class*

Robert V. Prongay (#270796)
Lesley F. Portnoy (#304851)
GLANCY PRONGAY
   & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
(310) 201-9150
(310) 201-9160 (fax)
rprongay@glancylaw.com
lportnoy@glancylaw.com

*Liaison Counsel for Lead Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| STEAMFITTERS LOCAL 449 PENSION PLAN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> MOLINA HEALTHCARE, INC., J. MARIO MOLINA, JOHN C. MOLINA, TERRY P. BAYER, and RICK HOPFER, <br><br> Defendants. | Case No. 2:18-cv-03579 AB (JCx) <br><br> <u>CLASS ACTION</u> <br><br> **LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date:  May 22, 2020 <br> Time:  10:00 a.m. <br> Court:  7B (Hon. André Birotte Jr.) |

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...........................................................................ii

NOTICE OF MOTION ................................................................................1

STATEMENT OF ISSUES TO BE DECIDED .............................................2

MEMORANDUM OF POINTS AND AUTHORITIES.................................2

PRELIMINARY STATEMENT ....................................................................2

     A.    Procedural History and Settlement Negotiations.................3

     B.    Principal Terms of the Proposed Settlement.......................5

     C.    Proposed Schedule of Events................................................7

ARGUMENT .................................................................................................8

I.     THE SETTLEMENT MERITS PRELIMINARY APPROVAL..................8

     A.    The Settlement Is the Product of Informed, Arm's-Length Negotiations Before an Experienced Mediator................10

     B.    The Settlement Amount Is Within a Range of Reasonableness........12

     C.    The Proposed Plan of Allocation Is Fair and Equitable ...................14

II.    THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS..............................................................................15

     A.    Standards Applicable to Class Certification .................................15

     B.    The Settlement Class Meets the Requirements of Rule 23(a)..........16

          1.    Rule 23(a)(1): Numerosity......................................................16

          2.    Rule 23(a)(2): Questions of Law or Fact Are Common..........17

          3.    Rule 23(a)(3): Lead Plaintiff's Claims Are Typical...............18

          4.    Rule 23(a)(4): Lead Plaintiff Is Adequate ..............................19

     C.    The Settlement Class Satisfies Rule 23(b)(3)...................................19

          1.    Common Questions of Law or Fact Predominate ..................19

          2.    A Class Action Is a Superior Method of Adjudication ..........21

III.   THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23, DUE PROCESS, AND THE PSLRA REQUIREMENTS ......................22

CONCLUSION.............................................................................................24

# TABLE OF AUTHORITIES

## Cases

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997) ...........................................................15-16, 20

*In re Banc of California Securities Litigation*,
   326 F.R.D. 640, 646 (C.D. Cal. 2018) ............................................ 16

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) ...........................................................20-21

*In re Bear Stearns Cos. Securities, Derivative*
   *& ERISA Litigation*,
   2009 WL 50132 (S.D.N.Y. Jan. 5, 2009) .......................................... 19

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) ...................................................17-18

*In re Computer Memories Securities Litigation*,
   111 F.R.D. 675 (N.D. Cal. 1986) ................................................ 18

*In re Cooper Cos. Securities Litigation*,
   254 F.R.D. 628 (C.D. Cal. 2009) ........................................ 16, 17, 20

*Desai v. Deutsche Bank Securities Ltd.*,
   573 F.3d 931 (9th Cir. 2009) .................................................... 21

*In re Finisar Corp. Securities Litigation*,
   2017 WL 6026244 (N.D. Cal. Dec. 5, 2017) ...................................... 12

*In re First Capital Holdings Corp. Financial*
   *Products Securities Litigation*,
   1993 WL 144861 (C.D. Cal. Feb. 26, 1993) ...................................... 20

*Grant v. Capital Management Services, L.P.*,
   2013 WL 6499698 (S.D. Cal. Dec. 11, 2013) ................................... 8, 9

*In re HP Securities Litigation*,
   2015 WL 4477936 (N.D. Cal. July 20, 2015) ...................................22-23

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998), *overruled on other grounds*
   *by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)........................ 17

*Howell v. JBI, Inc.*,
    298 F.R.D. 649 (D. Nev. 2014) ........................................................... 17

*In re Independent Energy Holdings PLC*
    *Securities Litigation*,
    2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) .................................. 10

*International Brotherhood of Electrical Workers Local*
    *697 Pension Fund v. International Game Technology, Inc.*,
    2012 WL 5199742 (D. Nev. Oct. 19, 2012) ...................................... 13

*Jaffe v. Morgan Stanley & Co.*,
    2008 WL 346417 (N.D. Cal. Feb. 7, 2008) ...................................... 15

*In re Juniper Networks, Inc. Securities Litigation*,
    264 F.R.D. 584 (N.D. Cal. 2009) ...................................................... 18

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ............................................................ 22

*In re LinkedIn User Privacy Litigation*,
    309 F.R.D. 573 (N.D. Cal. 2015) ...................................................... 12

*Linney v. Cellular Alaska Partnership*,
    1997 WL 450064 (N.D. Cal. July 18, 1997),
    *aff'd*, 151 F.3d 1234 (9th Cir. 1998) .............................................. 10

*Lo v. Oxnard European Motors, LLC*,
    2011 WL 6300050 (S.D. Cal. Dec. 15, 2011) ................................. 13-14

*McPhail v. First Command Financial Planning, Inc.*,
    247 F.R.D. 598 (S.D. Cal. 2007) ...................................................... 21

*In re Mego Fin. Corp. Securities Litigation*,
    213 F.3d 454 (9th Cir. 2000) ...................................................... 16, 19

*In re Mercury Interactive Corp. Securities Litigation*,
    618 F.3d 988 (9th Cir. 2010) .............................................................. 8

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) .......................................................................... 22

*Negrete v. Allianz Life Insurance Co. of North America*,
    238 F.R.D. 482 (C.D. Cal. 2006) ...................................................... 20

*Noll v. eBay, Inc.*,
    309 F.R.D. 593 (N.D. Cal. 2015) ............................................................... 8

*In re NVIDIA Corp. Derivative Litigation*,
    2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ........................................ 11

*In re Portal Software, Inc. Securities Litigation*,
    2007 WL 1991529 (N.D. Cal. June 30, 2007) ........................................ 10

*Schuler v. Medicines Co.*,
    2016 WL 3457218 (D.N.J. June 24, 2016) ............................................. 13

*In re Syncor ERISA Litigation*,
    516 F.3d 1095 (9th Cir. 2008) ...................................................................... 8

*In re Syncor ERISA Litigation*,
    227 F.R.D. 338 (C.D. Cal. 2005) ............................................................. 18

*In re THQ Inc. Securities Litigation*,
    2002 WL 1832145 (C.D. Cal. Mar. 22, 2002) ....................................... 16

*Tsirekidze v. Syntax-Brillian Corp.*,
    2009 WL 2151838 (D. Ariz. July 17, 2009) .......................................... 18

*Walker v. Life Insurance Co. of the Southwest*,
    953 F.3d 624 (9th Cir. 2020) .................................................................. 20

*West v. Circle K Stores, Inc.*,
    2006 WL 1652598 (E.D. Cal. June 13, 2006) ........................................... 8

*Williams v. Costco Wholesale Corp.*,
    2010 WL 761122 (S.D. Cal. Mar. 4, 2010) ........................................... 19

*Young v. Polo Retail, LLC*,
    2006 WL 3050861 (N.D. Cal. Oct. 25, 2006) ........................................... 9

*In re Zynga Inc. Securities Litigation*,
    2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ........................................ 10

## Statutes & Rules

15 U.S.C. §78j(b) .......................................................................................... 3

15 U.S.C. §78t(a) .......................................................................................... 3

15 U.S.C. §78u-4(a)(7)(A)-(F) ................................................................... 23

15 U.S.C. §78u-4(e) ................................................................................... 14

17 C.F.R. §240.10b-5 ................................................................................... 3

Fed. R. Civ. P. 23 ..................................... 1, 2, 7, 9, 12, 16, 17, 18, 19, 20, 21, 22, 23

Fed. R. Civ. P. 23(a) ................................................... 1, 2, 16, 17, 18, 19

Fed. R. Civ. P. 23(a)(1) ................................................................................... 16

Fed. R. Civ. P. 23(a)(2) ................................................................................... 17

Fed. R. Civ. P. 23(a)(3) ................................................................................... 18

Fed. R. Civ. P. 23(a)(4) ................................................................................... 19

Fed. R. Civ. P. 23(b)(3) ................................................. 1, 2, 16, 19, 20, 21, 22

Fed. R. Civ. P. 23(b)(3)(A) ................................................................................... 21

Fed. R. Civ. P. 23(b)(3)(B) ........................................................... 19, 20, 21

Fed. R. Civ. P. 23(b)(3)(C) ................................................................................... 21

Fed. R. Civ. P. 23(b)(3)(D) ................................................................................... 21

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................... 22

Fed. R. Civ. P. 23(e) ................................................................. 1, 2, 7, 9

Fed. R. Civ. P. 23(e)(1)(B) ................................................................................... 9

Fed. R. Civ. P. 23(e)(2) ................................................................................... 9

Fed. R. Civ. P. 23(e)(3) ................................................................................... 7

Fed. R. Civ. P. 23(f) ................................................................................... 12

Fed. R. Civ. P. 23(g) ................................................................................... 1, 2

Fed. R. Civ. P. 23(g)(1) ................................................................................... 19

**Other Authorities**

Manual for Complex Litigation, Fourth, §13.14 (2004) ........................................... 9

# NOTICE OF MOTION

TO:     ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 22, 2020 at 10:00 a.m., or as soon thereafter as counsel may be heard, Lead Plaintiff Steamfitters Local 449 Pension Plan ("Steamfitters" or "Lead Plaintiff"), individually and on behalf of the Settlement Class, will respectfully move this Court for an Order, pursuant to Rules 23(a), (b)(3), (e), and (g) of the Federal Rules of Civil Procedure: (i) preliminarily approving a proposed settlement of the above-titled class action (the "Settlement"); (ii) certifying the Settlement Class pursuant to Rules 23(a) and (b)(3), and appointing Lead Plaintiff as Class Representative and the law firm of Labaton Sucharow LLP as Class Counsel for the Settlement Class; (iii) directing that notice of the Settlement be provided to the Settlement Class; (iv) scheduling a hearing to consider the fairness, reasonableness, and adequacy of the Settlement, the proposed Plan of Allocation for the Settlement proceeds, and Lead Counsel's application for an award of attorneys' fees and expenses; and (v) granting such other and further relief as this Court deems just and proper.  Defendants do not oppose the motion.

This motion is supported by the following memorandum of points and authorities, the accompanying Stipulation and Agreement of Settlement dated as of May 5, 2020, with annexed exhibits (the "Settlement Agreement"), and the accompanying Declaration of Christine M. Fox, with annexed exhibits.[1]

A proposed Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date for Hearing on Final Approval of Settlement ("Preliminary Approval Order"), with annexed exhibits, which was negotiated by the Parties, is submitted herewith.

---

[1] All capitalized terms used herein are defined in the Settlement Agreement and have the same meanings as set forth therein.

In view of the closure of the First Street U.S. Courthouse owing to the coronavirus (COVID-19) pandemic, Lead Plaintiff respectfully requests that any hearing on this motion be held by teleconference.

## STATEMENT OF ISSUES TO BE DECIDED

(1)   Should the Court grant preliminary approval of the proposed Settlement on the terms set forth in the Settlement Agreement?

(2)   Should the Court preliminarily certify the Settlement Class for settlement purposes and preliminarily appoint Lead Plaintiff as Class Representative and Labaton Sucharow LLP as Class Counsel?

(3)   Should the Court approve the form and substance of the proposed Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses ("Notice"), Proof of Claim and Release form ("Claim Form"), and the Summary Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses ("Summary Notice"), annexed as Exhibits A-1 through A-3 to the proposed Preliminary Approval Order, as well as the manner of notifying the Settlement Class of the Settlement?

(4)   Should the Court schedule a hearing to determine whether the Settlement and Plan of Allocation should be finally approved and to consider Lead Counsel's application for an award of attorneys' fees and payment of expenses ("Settlement Hearing")?

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

Lead Plaintiff Steamfitters Local 449 Pension Plan, by its counsel Labaton Sucharow LLP ("Lead Counsel"), respectfully submits this memorandum of points and authorities in support of its unopposed motion, pursuant to Fed. R. Civ. P. 23(a), (b)(3), (e), and (g) of the Federal Rules of Civil Procedure, for preliminary approval of a proposed class action settlement in the amount of $7,500,000 in cash, pursuant to the terms set forth in the Settlement Agreement, which will resolve this Action in its entirety.  Lead Plaintiff, on behalf of itself and all others similarly situated, entered into the Settlement Agreement with each of the Defendants in the Action: Molina Healthcare, Inc. ("Molina" or the

Lead Pltf's Unopposed Mot. for Prelim. Approval of Proposed Class Action Settlement & MPA
No. 2:18-cv-03579 AB (JCx)

2

"Company"), J. Mario Molina, John C. Molina, Terry P. Bayer, and Rick Hopfer (collectively, "Defendants").

Lead Plaintiff respectfully submits that the Settlement is an excellent result for the Settlement Class in view of the risks, costs, and duration of continued litigation. The decision to settle was informed by a comprehensive investigation, motion practice, and extensive good-faith, arm's-length negotiations overseen by an experienced mediator. For the reasons stated herein, Lead Plaintiff respectfully requests that the Court grant this motion.

## A. Procedural History and Settlement Negotiations

On April 27, 2018, Steamfitters filed a securities class action complaint in this Court on behalf of purchasers of Molina common stock. The Action was ultimately assigned to the Hon. Manuel Real, United States District Judge.

On June 29, 2018, Steamfitters moved pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA") for appointment as lead plaintiff and for the approval of its selection of Labaton Sucharow LLP as lead counsel for the Class. Judge Real granted the motion on August 21, 2018.

After the Parties met and conferred regarding Defendants' intention to move to dismiss Lead Plaintiff's initial complaint, Lead Plaintiff filed the operative Amended Class Action Complaint (the "Complaint") on October 5, 2018. The Complaint alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. §240.10b-5, on behalf of a Class defined essentially as all persons and entities that purchased or otherwise acquired Molina publicly traded common stock between October 31, 2014 and August 2, 2017, inclusive (the "Class Period"), and were damaged thereby.

Defendants moved to dismiss. The motion was fully briefed as of November 19, 2018.

On December 13, 2018, the Court issued an Order granting Defendants' motion and dismissing the Complaint with prejudice.  The Court ruled that Lead Plaintiff failed to sufficiently plead falsity and scienter.

Lead Plaintiff appealed to the U.S. Court of Appeals for the Ninth Circuit.

On June 26, 2019, during the briefing of the appeal, the Hon. Manuel Real passed away.

After the appeal was fully briefed, the Parties agreed to engage Michelle Yoshida, Esq. of PhillipsADR, a respected and experienced mediator, to assist the Parties in exploring a potential resolution.  The Parties met with Ms. Yoshida in Corona del Mar, California on February 27, 2020.  The mediation involved an extended effort to settle the claims and was preceded by the exchange of mediation statements and the provision of certain nonpublic documents by Molina to Lead Plaintiff.  While these discussions narrowed the differences between Lead Plaintiff and Defendants, the Parties did not reach an accord that day.

On March 1, 2020, the Court of Appeals scheduled oral argument to proceed on May 13, 2020.

Thereafter, on March 5, 2020, following continued arm's-length negotiations facilitated and supervised by Ms. Yoshida, the Parties reached an agreement-in-principle to settle this Action.

On March 19, 2020, the Parties filed a Joint Motion to Vacate Oral Argument and Stay Appeal Pending Settlement with the Court of Appeals.  The Joint Motion advised the Court of Appeals that the Parties had reached a settlement agreement-in-principle, and asked the Court of Appeals to stay the appeal and vacate the May 13, 2020 oral argument date to allow the Parties time to negotiate and prepare the formal settlement documents.

On March 26, 2020, the Court of Appeals granted the Joint Motion.  The Court of Appeals stayed the appeal until September 18, 2020 or until such time as the District Court grants final approval to the Settlement, whichever comes first.

The Court of Appeals directed the Parties, within seven (7) days after the stay expires, either to voluntarily withdraw the appeal pursuant to Federal Rule of Appellate Procedure 42(b), or file a status report and motion for appropriate relief.

On April 21, 2020, the Parties filed a Joint Motion for Limited Remand Pending Consideration of Proposed Class Action Settlement with the Court of Appeals.  On April 22, 2020, the Court of Appeals granted the motion and remanded the matter to the District Court for the limited purpose of allowing the District Court to consider the Settlement and related matters.

On April 24, 2020, the District Court reassigned this Action to the Hon. André Birotte Jr., United States District Judge.

Lead Plaintiff, through Lead Counsel, conducted a thorough investigation relating to the claims, defenses, and underlying events and transactions that are the subject of this Action.  This process included reviewing and analyzing: (i) documents filed publicly by the Company with the SEC; (ii) publicly available information, including press releases, news articles, and other public statements issued by or concerning the Company and Defendants; (iii) research reports issued by financial analysts concerning the Company; (iv) publicly available data concerning Molina common stock; (v) certain internal, nonpublic documents provided to Lead Counsel by former employees of Molina; (vi) documents produced by Defendants in connection with the mediation; and (vii) the applicable law governing the claims and potential defenses.  Lead Counsel also interviewed former Molina employees and other persons with relevant knowledge and consulted with experts on damages and causation issues and healthcare industry information technology (IT) systems.

**B.    Principal Terms of the Proposed Settlement**

Pursuant to the Settlement Agreement, Defendants shall pay, or cause to be paid, the $7.5 million Settlement Amount into the Escrow Account within twenty (20) business days after the entry of the Preliminary Approval Order (or when

1  Labaton Sucharow LLP provides wiring instructions for the Escrow Account to

2  Defendants' Counsel).  *See* Settlement Agmt. ¶6.

3       In exchange for this payment, upon the Effective Date of the Settlement,

4  Lead Plaintiff and each and every other Settlement Class Member, on behalf of

5  themselves and each of their respective heirs, executors, trustees, administrators,

6  predecessors, successors, and assigns, shall be deemed to have fully, finally, and

7  forever waived, released, discharged, and dismissed each and every one of the

8  Released Claims against each and every one of the Released Defendant Parties

9  and shall forever be barred and enjoined from commencing, instituting,

10  prosecuting, or maintaining any and all of the Released Claims against any and all

11  of the Released Defendant Parties.  *Id.* ¶4.

12       The definition of Released Claims and Unknown Claims has been tailored

13  to release only claims that relate to transactions in Molina publicly traded

14  common stock during the Class Period that were raised, or could have been raised,

15  by Class Members in the Action.  *See id.* ¶¶1(bb) & 1(oo).

16       After approval of the Settlement and approval of the Plan of Allocation for

17  the proceeds of the Settlement, the proposed Claims Administrator, Angeion

18  Group, will process all claims received and will apply the plan of allocation

19  approved by the Court at the Settlement Hearing.  At the completion of the

20  administration, the Claims Administrator will distribute the Net Settlement Fund

21  to eligible claimants, and will continue to do so as long as it is economically

22  feasible to make distributions.  *Id.* ¶26.  When it is no longer feasible to make

23  additional distributions, because of the *de minimis* amount of funds left in the Net

24  Settlement Fund, Lead Plaintiff proposes that the unclaimed balance shall be

25  contributed to a non-sectarian, not-for-profit charitable organization serving the

26  public interest designated by Lead Plaintiff and approved by the Court.  *Id.*  The

27  Settlement does not contain any reversion to Defendants.  Moreover, this is not a

28  "claims-made" settlement; regardless of how many claims are submitted, the

entire $7.5 million Settlement Amount (less Court-approved fees, expenses, notice and administration expenses, and taxes) will benefit the Settlement Class. *Id*. ¶12.

Pursuant to Rule 23(e)(3), the only agreements made by the Parties in connection with the Settlement are (i) the Settlement Agreement and (ii) the confidential Supplemental Agreement Regarding Requests for Exclusion ("Supplemental Agreement"), dated as of May 5, 2020, concerning the circumstances under which Defendants may terminate the Settlement based upon the number of exclusion requests. *See* Settlement Agmt. ¶40. It is standard to keep such agreements confidential so that a large investor, or a group of investors, cannot intentionally try to leverage a better recovery for themselves by threatening to opt out, at the expense of the class. The Supplemental Agreement can be provided to the Court *in camera* or under seal.

### C.    Proposed Schedule of Events

Lead Plaintiff respectfully proposes the following schedule for the various Settlement-related events, each of which is reflected in the proposed Preliminary Approval Order:

| | |
|---|---|
| Deadline for mailing individual Notices and Claim Forms (the "Notice Date"). | Ten (10) business days after entry of the Preliminary Approval Order. |
| Deadline for publication of Summary Notice in *Investor's Business Daily* and transmission over *PR Newswire.* | Within 14 calendar days of the Notice Date. |
| Deadline for filing motions in support of the Settlement, the Plan of Allocation, and Lead Counsel's application for an award of attorneys' fees and expenses. | No later than 35 calendar days before the Settlement Hearing. |
| Deadline for submission of requests for exclusion from the Settlement Class; or objections to the Settlement, Plan of Allocation, or Lead Counsel's request for an award of attorneys' fees and expenses. | No later than 21 calendar days before the Settlement Hearing. |

| Deadline for filing reply papers in support of the Settlement, the Plan of Allocation, or Lead Counsel's request for fees and expenses. | No later than seven (7) calendar days before the Settlement Hearing. |
| --- | --- |
| Deadline for submission of Claim Forms. | Postmarked or received no later than five (5) calendar days before the Settlement Hearing. |
| Settlement Hearing. | At the Court's convenience, but no fewer than ninety (90) calendar days after the date of the entry of the Preliminary Approval Order. |

This schedule is similar to those approved by courts in numerous securities class action settlements, and complies with the Ninth Circuit's ruling in *In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988, 993-94 (9th Cir. 2010) (requiring that attorneys' fee motion be made available to class before deadline for objecting to fee).

## ARGUMENT

## I.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL

As a matter of public policy, settlement is a strongly favored method for resolving disputes, especially in complex class actions.  *See, e.g., In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ("[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.") (citation omitted); *Grant v. Capital Mgmt. Servs., L.P.*, 2013 WL 6499698, at *2 (S.D. Cal. Dec. 11, 2013) ("Voluntary conciliation and settlement are the preferred means of dispute resolution in complex class action litigation.") (citation omitted).

Federal Rule of Civil Procedure 23 requires court approval of any settlement of a class action.  Approval of class action settlements proceeds in two stages: (i) preliminary approval, followed by notice to the class; and (ii) final approval.  *See, e.g., Noll v. eBay, Inc.*, 309 F.R.D. 593, 602 (N.D. Cal. 2015); *West v. Circle K Stores, Inc.*, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006);

Manual for Complex Litigation, Fourth, §13.14 (2004).  By this motion, Lead Plaintiff requests that the Court take the first step in the approval process: preliminary approval of the Settlement.

Effective December 1, 2018, Rule 23(e) was amended to, among other things, specify that the crux of a court's preliminary approval evaluation is whether notice should be provided to the class given the likelihood that the court will be able to finally approve the settlement and certify the class.  Fed. R. Civ. P. 23(e)(1)(B).[2]  As has long been recognized, the preliminary approval standard involves "both a procedural and a substantive component."  *Young v. Polo Retail, LLC,* 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006).  As the court explained:

> If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing. . . .

*Id.* (citing Manual for Complex Litigation, Second, §30.44 (1985)).

A court "need not conduct a full settlement fairness appraisal before granting preliminary approval."  *Grant*, 2013 WL 6499698, at *5 (citation and internal quotations omitted).  "The Court cannot fully assess all of [the] fairness factors until after the final approval hearing. . . .  Instead, the settlement need only

---

[2] In connection with final approval of the Settlement, the Court will be asked to review the following core factors identified by amended Rule 23(e)(2), whether: (a) Lead Plaintiff and Lead Counsel adequately represented the class; (b) the Settlement was negotiated at arm's-length; (c) the relief provided to the class is adequate; and (d) the proposal treats class members equitably relative to each other.  Fed. R. Civ. P. 23(e)(2).  In assessing these core factors, the Court may also consider the Ninth Circuit's long-standing approval factors, many of which overlap with the Rule 23 considerations: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement."  *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *8 (N.D. Cal. Oct. 27, 2015) (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)).

be potentially fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out." *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *8 (N.D. Cal. Oct. 27, 2015) (quotation omitted).  Applying these standards, the Settlement should be preliminarily approved.

## A.   The Settlement Is the Product of Informed, Arm's-Length Negotiations Before an Experienced Mediator

Courts presume that a proposed settlement is fair and reasonable when it is the "product of arms-length negotiations." *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007); *see also Linney v. Cellular Alaska P'ship*, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998) ("The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations . . . create a presumption that the agreement is fair.") (citation omitted).  "[T]hat the Settlement was reached . . . with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable." *In re Independent Energy Holdings PLC Sec. Litig.*, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) (citation omitted).

Here, the Settlement was achieved following arm's-length, mediated negotiations among knowledgeable counsel experienced in securities and class action litigation.  Before and during the mediation, the strengths and weaknesses of Plaintiff's and Defendants' respective claims and defenses were explored by the Parties.  Lead Counsel developed a deep understanding of the facts of the case and merits of the claims through their analysis of, *inter alia*: (i) publicly available information regarding the Company and interviews of former employees of Molina; (ii) briefing on Defendants' motion to dismiss and Plaintiffs' appeal of the District Court's dismissal of the Complaint; (iii) analysis of Defendants' mediation statement and exhibits; (iv) documents produced by Defendants in

Lead Pltf's Unopposed Mot. for Prelim. Approval of Proposed Class Action Settlement & MPA
No. 2:18-cv-03579 AB (JCx)

10

1   advance of the mediation; and (v) consultations with experts in Healthcare IT and
2   damages and loss causation.
3         Steamfitters is a sophisticated institutional investor, based in Pittsburgh,
4   Pennsylvania, that represents union-trained steamfitters and their beneficiaries,
5   with $535 million in total pension assets under management as of April 2018.
6   *See*, *e.g.*, Am. Compl. ¶26.  Steamfitters has been appointed lead plaintiff in
7   numerous securities class actions and purchased shares of Molina common stock
8   during the Class Period.  With an informed understanding, the Lead Plaintiff
9   agreed to the Settlement.  There has been no collusion.
10        Additionally, throughout the Action, Lead Plaintiff had the benefit of the
11  advice of knowledgeable counsel well-versed in shareholder class action litigation
12  and securities fraud cases.  Labaton Sucharow LLP is among the most
13  experienced and skilled firms in the securities litigation field, and has a long and
14  successful track record in such cases.  *See* Firm Resume of Labaton Sucharow
15  LLP, Fox Decl. Ex. A.  Labaton Sucharow LLP has served as lead counsel in a
16  number of high profile matters.  *See*, *e.g.*, *In re Am. Int'l Grp., Inc. Sec. Litig.*,
17  No. 04-cv-8141 (S.D.N.Y.) ($1 billion recovery); *In re HealthSouth Corp. Sec.*
18  *Litig.*,  No. 03-cv-1500 (N.D. Ala.) ($600 million recovery); and *In re*
19  *Countrywide Fin. Corp. Sec. Litig.*, No. 07-cv-5295 (C.D. Cal.) ($600 million
20  recovery).
21        Courts give considerable weight to the opinion of experienced and informed
22  counsel.  *See*, *e.g.*, *In re NVIDIA Corp. Derivative Litig.*, 2008 WL 5382544, at *4
23  (N.D. Cal. Dec. 22, 2008) ("[S]ignificant weight should be attributed to counsel's
24  belief that settlement is in the best interest of those affected by the settlement.").
25  Lead Counsel's belief in the fairness and reasonableness of the Settlement
26  supports preliminary approval.
27
28

**B.      The Settlement Amount Is Within a Range of Reasonableness**

This Settlement Amount is well-within a range of reasonableness for at least the following reasons.

*First*, the Complaint was dismissed for failure to state a claim.  There was no guarantee that the Ninth Circuit would reverse even in part.  The Settlement represents assured and substantial tangible recovery, without the considerable risk, expense, and delay of the pending appeal, potentially another round of motions to dismiss, class certification, summary judgment, trial, and post-trial litigation.  *See*, *e.g.*, *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015) ("Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.") (citation omitted).

Even if the Court of Appeals reversed in part, Lead Plaintiff likely would have been required to file a further amended complaint and faced another round of motions to dismiss.  Even if any further amended complaint was sustained, Lead Plaintiff would have to obtain class certification.  Even if the class was certified, Defendants would have likely challenged certification in a Rule 23(f) petition to the Ninth Circuit.  At the close of fact and expert discovery, Defendants would likely have sought summary judgment, focusing on expert and fact evidence of a lack of price impact, and a complex attack on the presumption of reliance that counsel for Defendants have successfully pioneered in this district.  *See In re Finisar Corp. Sec. Litig.*, 2017 WL 6026244, at *1 (N.D. Cal. Dec. 5, 2017).  There was no guarantee that the proposed class would prevail in Defendants' continuous challenges, and Lead Plaintiff would face increasing litigation risk at each step.

*Second*, Lead Plaintiff's damages expert has estimated that if liability were established with respect to all of the claims, including for the three alleged corrective disclosures, the most reasonable estimate of aggregate damages

Lead Pltf's Unopposed Mot. for Prelim. Approval of Proposed Class Action Settlement & MPA
No. 2:18-cv-03579 AB (JCx)

12

recoverable at trial was $177.5 million to $220.8 million, taking into account the exclusion of pre-Class Period gains and disaggregation on certain of the corrective disclosures.  Accordingly, the Settlement recovers between 3.4% and 4.2% of aggregate damages likely recoverable at trial.  (Without disaggregation, damages excluding pre-Class Period gains are approximately $257.4 million.)  Had the case proceeded, Defendants would have strenuously argued for the exclusion of each of the alleged corrective disclosures on the grounds Lead Plaintiff could not sufficiently link them to Defendants' alleged fraud.  Defendants also would have argued that Molina's stock price reacted to timely disclosed financial results unrelated to the alleged fraud – financial results that, when disaggregated, significantly reduce the amount of alleged damages.  If these arguments prevailed at class certification, summary judgment, or trial, the Settlement Class could have recovered significantly less or, indeed, nothing.

Since the enactment of the PSLRA, courts have approved settlements that recovered a similar, or smaller, percentage of maximum damages.  *See*, *e.g.*, *Schuler v. Medicines Co.*, 2016 WL 3457218, at *8 (D.N.J. June 24, 2016) (approving $4,250,000 settlement that reflected approximately 4.0% of estimated recoverable damages and noting percentage "falls squarely within the range of previous settlement approvals"); *International Bhd. of Elec. Workers Local 697 Pension Fund v. International Game Tech., Inc.*, 2012 WL 5199742, at *2-3 (D. Nev. Oct. 19, 2012) (approving $12.5 million settlement recovering about 3.5% of the maximum damages that plaintiffs believed could be recovered at trial and noting that the amount was within the median recovery in securities class actions settled in the last few years).

The $7.5 million Settlement recovery falls within a range of reasonableness. *See*, *e.g.*, *Lo v. Oxnard European Motors, LLC*, 2011 WL 6300050, at *5 (S.D. Cal. Dec. 15, 2011) (addressing preliminary approval and stating that "'[c]onsidering the potential risks and expenses associated with continued

prosecution of the Lawsuit, the probability of appeals, the certainty of delay, and the ultimate uncertainty of recovery through continued litigation,' the Court finds that, on balance, the proposed settlement is fair, reasonable, and adequate") (alteration in original) (citation omitted).

## C.   The Proposed Plan of Allocation Is Fair and Equitable

At the final Settlement Hearing, the Court will be asked to approve the proposed Plan of Allocation for distributing the proceeds of the Settlement to eligible claimants.  The Plan of Allocation, which is set forth in full in the Notice, was developed with the assistance of Lead Plaintiff's damages expert, based on the measure of damages for claims under the Exchange Act.

Here, the Plan of Allocation is designed to fairly and equitably distribute the Settlement proceeds among members of the Settlement Class who were allegedly injured by Defendants' alleged misrepresentations and who submit valid and timely claims.  The Plan provides for the calculation of a "Recognized Loss" amount for each properly documented purchase or acquisition of Molina common stock during the Class Period.  A claimant's total Recognized Losses will depend on, among other things, when their shares and/or exchange traded options were purchased and/or sold during the Class Period in relation to the disclosure dates alleged in the Action, whether the shares were held through or sold during the statutory 90-day lookback period, *see* 15 U.S.C. §78u-4(e) (providing methodology for limiting damages in securities fraud actions), and the value of the shares when they were sold or held.

The Recognized Loss formulas are tied to liability and damages.  In developing the Plan of Allocation, Lead Plaintiff's damages expert considered the amount of artificial inflation allegedly present in Molina's common stock throughout the Class Period that allegedly was caused by the alleged fraud.  An inflation table was created and is part of the Plan of Allocation.  The table will be

utilized by the Claims Administrator in calculating Recognized Loss amounts for claimants.

The Claims Administrator will calculate claimants' Recognized Losses using the transactional information provided by claimants in their claim forms, which can be mailed to the Claims Administrator, submitted online using the settlement website, or, for large investors, with hundreds of transactions, via e-mail to the Claims Administrator's electronic filing team.  Because most securities are held in "street name" by the brokers that buy them on behalf of clients, the Claims Administrator, Lead Counsel, and Defendants do not have Settlement Class Members' transactional data and a claims process is required.  Because the Settlement does not recover 100% of alleged damages, the Claims Administrator will determine each eligible claimant's *pro rata* share of the Net Settlement Fund based upon each claimant's total "Recognized Claim" compared to the aggregate Recognized Claims of all eligible claimants.

## II.   THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS

### A.   Standards Applicable to Class Certification

At the Settlement Hearing, Lead Plaintiff will ask the Court to grant final approval to the Settlement on behalf of the Settlement Class, which is defined as "all persons and entities who purchased or otherwise acquired Molina publicly traded common stock during the period from October 31, 2014 through August 2, 2017, inclusive, and who were damaged thereby, excluding those expressly identified in Paragraph 1(jj) of the Settlement Agreement.  For this reason, it is appropriate for the Court to consider, at the preliminary approval stage, whether certification of the Settlement Class is appropriate.  *See Jaffe v. Morgan Stanley & Co.*, 2008 WL 346417, at \*2 (N.D. Cal. Feb. 7, 2008).

Defendants have agreed to certification of the Settlement Class solely for purposes of the Settlement.  Settlement Agmt. ¶3.  Courts have acknowledged the

propriety of certifying a class solely for purposes of a class action settlement.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  In the Ninth Circuit, "Rule 23 is to be liberally construed in a securities fraud context because class actions are particularly effective in serving as private policing weapons against corporate wrongdoing."  *In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D. Cal. 2009) (citation and internal quotation marks omitted); *see also In re THQ Inc. Sec. Litig.*, 2002 WL 1832145, at *2 (C.D. Cal. Mar. 22, 2002) ("[T]he law in the Ninth Circuit is very well established that the requirements of Rule 23 should be liberally construed in favor of class action cases brought under the federal securities laws.") (citations omitted).

A settlement class, like other certified classes, must satisfy all the requirements of Rule 23(a) and (b).  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000).  The manageability concerns of Rule 23(b)(3) are not at issue for a settlement class, however, because the proposal is that there will be no trial.  *See Amchem Prods.*, 521 U.S. at 593 ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested.").  As discussed below, the Action satisfies all the factors for class certification.

## B.   The Settlement Class Meets the Requirements of Rule 23(a)

### 1.   Rule 23(a)(1): Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. "'[I]mpracticability does not mean impossibility,' it means that joinder of all class members must be difficult or inconvenient."  *In re Banc of Cal. Sec. Litig.*, 326 F.R.D. 640, 646 (C.D. Cal. 2018) ("[I]mpracticability does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class.") (quoting *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913 (9th Cir. 1964)).  In securities litigation, courts regularly find the numerosity requirement is satisfied with respect to putative purchasers of

nationally traded securities on the volume of outstanding shares.  *See Howell v. JBI, Inc*., 298 F.R.D. 649, 654-55 (D. Nev. 2014) ("in securities cases, when millions of shares are traded during the proposed class period, a court may infer that the numerosity requirement is satisfied"); *Cooper*, 254 F.R.D. at 634 ("The Court certainly may infer that, when a corporation has millions of shares trading on a national exchange, more than 40 individuals purchased stock over the course of more than a year.  It is likely that thousands of people made such purchases.").

Here, it is evident that the Settlement Class satisfies numerosity and consists of (at least) thousands of investors.  Throughout the Class Period, Molina common stock traded actively on the New York Stock Exchange ("NYSE").  As of the Company's Report on Form 10-Q for the quarter ended September 30, 2016, Molina had 56,821,000 shares of common stock outstanding owned by thousands of persons.  *See* Am. Compl. ¶311.  Common sense suggests that these shares were purchased by thousands of investors during the Class Period, making joinder impracticable.

## 2.     Rule 23(a)(2): Questions of Law or Fact Are Common

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The Ninth Circuit construes this requirement "permissively," and has stated that that "[a]ll questions of fact and law need not be common to satisfy the rule."  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

Securities fraud cases have long been found to satisfy the commonality requirement:

> The overwhelming weight of authority holds that repeated misrepresentations of the sort alleged here satisfy the "common question" requirement.  Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members'

positions, and that the issue may profitably be tried in one suit. *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975); *see also In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 584, 588 (N.D. Cal. 2009) ("Repeated misrepresentations by a company to its stockholders satisfy the commonality requirement of Rule 23(a)(2).").

In this case, common questions of law and fact abound.  The central questions—whether Defendants' statements during the Class Period regarding the scalability of Molina's administrative infrastructure were materially false and misleading and whether Defendants acted with the requisite mental state—are the same for all class members.

### 3.      Rule 23(a)(3): Lead Plaintiff's Claims Are Typical

Rule 23(a)(3) is satisfied where the claims of the proposed class representatives arise from the same course of conduct that gives rise to the claims of the other class members, and where the claims are based on the same legal theory.  *In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 680 (N.D. Cal. 1986).  Rule 23(a)(3) does not require plaintiffs to show that their claims are identical on every issue to those of the class, but merely that significant common questions exist.  *In re Syncor ERISA Litig.*, 227 F.R.D. 338, 344 (C.D. Cal. 2005). Differences in the amount of damages, the size or manner of purchase, type of purchase, and even the specific documents influencing the purchase will not render the claim atypical in most securities actions.  *See Tsirekidze v. Syntax-Brillian Corp.*, 2009 WL 2151838, at *4 (D. Ariz. July 17, 2009).

Here, Lead Plaintiff's claims are typical to those of the other Members of the Settlement Class.  Like all Settlement Class Members, Lead Plaintiff purchased the publicly traded common stock of Molina during the Class Period and claims to have suffered damages when Defendants' alleged material misstatements and omissions were revealed.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 4.   Rule 23(a)(4): Lead Plaintiff Is Adequate

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Mego*, 213 F.3d at 462.

Here, as mentioned above, Lead Plaintiff is a sophisticated institutional investor that has and will continue to represent the interests of the Settlement Class fairly and adequately.  There is no antagonism or conflict of interest between Lead Plaintiff and the proposed Settlement Class.  Lead Plaintiff and Members of the Settlement Class share the common objective of maximizing their recovery from Defendants when considering the totality of the relevant circumstances.  Lead Counsel also has extensive experience and expertise in complex securities litigation and class action proceedings throughout the United States.  *See* Labaton Sucharow LLP Firm Resume, Fox Decl. Ex. A; *see also In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*, 2009 WL 50132, at *10 (S.D.N.Y. Jan. 5, 2009) (Labaton Sucharow has "substantial experience in the prosecution of shareholder and securities class actions").  Lead Counsel is well qualified and able to conduct this Action, and has ably and effectively represented Lead Plaintiff and the Settlement Class throughout.[3]

### C.   The Settlement Class Satisfies Rule 23(b)(3)

### 1.   Common Questions of Law or Fact Predominate

Rule 23(b)(3) sets forth two requirements, the first being that the "questions

---

[3] Accordingly, Lead Counsel should also be appointed Class Counsel under Fed. R. Civ. P. 23(g)(1).  *See, e.g.*, *Williams v. Costco Wholesale Corp.*, 2010 WL 761122, at *6 (S.D. Cal. Mar. 4, 2010) (appointing as class counsel attorneys who, as here, have "extensive experience in class actions" and appeared "competent to represent the class").

of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623. The Court properly "focus[es] on whether common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication; if so, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Walker v. Life Ins. Co. of the Sw.*, 953 F.3d 624, 630 (9th Cir. 2020) (quotations omitted). The predominance requirement is "readily met" in securities class actions. *Amchem Prods.*, 521 U.S. at 625; *see also Cooper*, 254 F.R.D. at 632 ("[S]ecurities fraud cases fit Rule 23 'like a glove.'") (citation omitted).

Here, common questions of law and fact predominate over individual questions because Defendants' alleged fraudulent statements and omissions affected all Settlement Class Members in the same manner (*i.e.*, through public statements made to the market and documents publicly filed with the SEC). Predominance of common questions generally will be found when, as alleged here, "many purchasers have been defrauded over time by similar misrepresentations, or by a common scheme to which alleged non-disclosures related." *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 492 (C.D. Cal. 2006) (citation omitted); *see also In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, 1993 WL 144861, at *6 (C.D. Cal. Feb. 26, 1993) ("The Ninth Circuit has repeatedly found that common issues predominate in federal securities actions where the proposed class members have all been injured by the same alleged course of conduct.") (citation omitted).

Moreover, classwide reliance is established in this Action through the "fraud-on-the-market" presumption of reliance in *Basic Inc. v. Levinson*, 485 U.S. 224, 241-42 (1988). *Basic* dispenses with the requirement that each Settlement

Class Member prove individual reliance on Defendants' alleged misstatements and/or omissions. *See id*. at 241-42. For the *Basic* presumption of reliance to apply, the market for the security must be "efficient." *Id*. at 248. Where Molina's common stock is traded on the NYSE, a national securities exchange, and was followed by numerous securities analysts and traded at regular substantial volumes, there is sufficient evidence of market efficiency. *See* Am. Compl. ¶¶316-318.

### 2.     A Class Action Is a Superior Method of Adjudication

Finally, Rule 23(b)(3) also requires that the action be superior to other available methods for the fair and efficient adjudication of the controversy. The rule lists several matters pertinent to this finding: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D); *see also Desai v. Deutsche Bank Sec. Ltd*, 573 F.3d 931, 937 (9th Cir. 2009). Each factor weighs in favor of superiority here. *See*, *e.g., McPhail v. First Command Fin. Planning, Inc.*, 247 F.R.D. 598, 615 (S.D. Cal. 2007) (noting "class action is the superior method for fair and efficient adjudication" because individual suits would "clog [] the federal courts with innumerable individual suits litigating the same issues repeatedly," the plaintiffs assert complex claims that would "be very costly to litigate," and each claim is for a "relatively small amount") (alteration in original) (citation omitted).

Further, without the settlement class device, Defendants could not obtain a class-wide release, and therefore would have had little, if any, incentive to settle. Certification of the Settlement Class will allow the Settlement to be administered in an organized and efficient manner. Accordingly, the Court should preliminarily

certify the Settlement Class.

## III.   THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23, DUE PROCESS, AND THE PSLRA REQUIREMENTS

Lead Counsel proposes that notice be given to the Settlement Class in the form of the mailed long-form Notice and the Summary Notice, which will both be published in a trade publication and be disseminated over the internet, which are annexed as Exhibits A-1 and A-3 to the proposed Preliminary Approval Order. Notice to the Settlement Class in the form and in the manner set forth in the proposed Preliminary Approval Order will fulfill the requirements of due process and comply with the Rule 23 and the PSLRA.

Rule 23(c)(2)(B) requires notice of the pendency of the class action to be "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). It must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Tr. Co.,* 339 U.S. 306, 314 (1950). Notice must describe "'the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *See*, *e.g.*, *Lane v. Facebook, Inc*., 696 F.3d 811, 826 (9th Cir. 2012) (quoting *Rodriguez v. West Publ'g Corp*., 563 F.3d 948, 962 (9th Cir. 2009)). Lead Counsel proposes to provide Settlement Class Members notice by: (i) sending the long-form Notice by first class mail to all individual Settlement Class Members that can reasonably be identified, using information provided by Molina's transfer agent, as well as information provided by brokers and other nominees about their customers who may have eligible purchases; (ii) publication of the Summary Notice in *Investor's Business Daily* and on the *PR Newswire*. *See In re HP Sec. Litig*., 2015 WL 4477936, at *2 (N.D. Cal. July 20, 2015) (finding the procedures for notice, including mailing individual notice and publication notice satisfy Rule 23, the PSLRA, and constitute the best notice

Lead Pltf's Unopposed Mot. for Prelim. Approval of Proposed Class Action Settlement & MPA
No. 2:18-cv-03579 AB (JCx)

22

practicable).  The Notice will also be accessible on the case-dedicated website and Lead Counsel's website.

The long-form Notice also satisfies the PSLRA's separate disclosure requirements by, *inter alia*, stating: (i) the amount of the Settlement determined in the aggregate and on an average per share basis;[4] (ii) that the Parties do not agree on the amount of damages that would be recoverable in the event Lead Plaintiff prevailed; (iii) that Lead Counsel intends to make an application for an award of attorneys' fees and expenses (including the amount of such fees and expenses determined on an average per share basis), and a brief explanation of the fees and expenses sought; (iv) the name, telephone number, and address of a representative of counsel for the Settlement Class who will be available to answer questions concerning any matter contained in the Notice; and (v) the reasons why the Parties are proposing the Settlement.  *See* 15 U.S.C. §78u-4(a)(7)(A)-(F).  The proposed Notice contains all of the information required by the PSLRA.  The Notices will, when mailed and published as provided for in the Preliminary Approval Order submitted herewith, fairly apprise Settlement Class Members of the Settlement and their options with respect thereto, and fully satisfy all due process requirements.

Finally, Lead Plaintiff also requests that the Court appoint Angeion Group as the Claims Administrator to provide all notices approved by the Court to Settlement Class Members, to process Claim Forms, and to administer the Settlement.  Angeion Group, based in Philadelphia, PA, is a recognized leader in legal administration services for class action settlements and legal noticing

---

[4] As stated in the Notice, the average recovery per allegedly damaged share of publicly traded common stock of Molina is approximately $0.19 per share before deduction of Court-approved fees and expenses, and approximately $0.14 per share after deduction of such fees and expenses.  These values are averages and individual investors' recoveries will differ, depending upon when they made purchase or sales, and whether they held their shares.

programs and has successfully administered numerous complex securities class action settlements.  *See* Angeion Group Company Resume, Fox Decl. Ex. B.

## CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that this Court issue the proposed Preliminary Approval Order annexed to the Settlement Agreement as Exhibit A and submitted herewith.

Dated: May 5, 2020

LABATON SUCHAROW LLP

By:  */s/ Christine M. Fox*
Jonathan Gardner (*pro hac vice*)
Christine M. Fox (*pro hac vice*)
David J. Goldsmith
Theodore J. Hawkins (*pro hac vice*)
140 Broadway
New York, NY 10005
(212) 907-0700
(212) 818-0477 (fax)
jgardner@labaton.com
cfox@labaton.com
dgoldsmith@labaton.com
thawkins@labaton.com

*Lead Counsel for Lead Plaintiff*
*Steamfitters Local 449 Pension Plan*
*and the Settlement Class*

Robert V. Prongay (#270796)
Lesley F. Portnoy (#304851)
GLANCY PRONGAY
  & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
(310) 201-9150
(310) 201-9160 (fax)
rprongay@glancylaw.com
lportnoy@glancylaw.com

*Liaison Counsel for Lead Plaintiff*

Lead Pltf's Unopposed Mot. for Prelim. Approval of Proposed Class Action Settlement & MPA
No. 2:18-cv-03579 AB (JCx)

24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on May 5, 2020, I authorized the electronic filing of the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing by e-mail to all counsel registered to receive such notice.

*/s/ Christine M. Fox*
Christine M. Fox